Otto Johannsen, Appellee, v. Mid-Continent Petroleum Company et al., Appellants.

No. 45833.

806

August 11, 1942.

Rehearing Denied November 20, 1942.

Floyd E. Page, of Denison, and J. C. Denton, R. H. Wills, J. H. Crocker, J. P. Greve, and I. L. Lockewitz, all of Tulsa, Oklahoma, for appellant Mid-Continent Petroleum Co.

Andrew Bell, of Denison, for appellant Thomas Lorenzen.

Powers & Gilchrist, of Denison, for appellee.

Mitchell, J.— Otto Johannsen was employed by the Denison Auto Company, distributors of Sinclair petroleum products, including gasoline. He operated a truck equipped with a tank, by means of which he transported and delivered petroleum products. The Denison Auto Company had a bulk plant on a siding, or industrial track, on the Illinois Central railroad in the town of Denison, Iowa, where it maintained tanks capable of holding large quantities of gasoline and which were filled from tank cars on the railroad siding. On the 30th

day of April 1936, Thomas Lorenzen was in the employ at Denison, Iowa, of the Mid-Continent Petroleum Corporation of Kentucky, in the operation of its bulk plant from which gasoline and kerosene were dispensed at wholesale. Its bulk station was located north of the Denison Auto Company and there were about 25 feet between the two bulk stations. The Mid-Continent Petroleum Corporation station consisted of a vertical tank and two horizontal tanks on stilts, and a small pump house in which was located a gasoline engine and pump which pumped gasoline from tank cars to the bulk-storage tanks. On the 30th day of April 1936, Thomas Lorenzen, the employee of the Mid-Continent Petroleum Corporation, in the operation of the bulk plant was pumping gasoline from a tank car to one of the horizontal storage tanks. He left the station with the gasoline engine and pump operating to go downtown. While he was absent, Otto Johannsen went to the bulk plant of his employer, the Denison Auto Company, and noticed when he arrived there that gasoline was overflowing from the Mid-Continent tank, that the wind was blowing the gasoline around, and gasoline was running on the ground. He ran over to the Mid-Continent bulk station and turned off the gasoline engine. Before he escaped from the premises the whole thing became a mass of flames, and in running through the flames to escape to a place of safety he was severely burned.

He commenced this action at law to recover damages against the Mid-Continent Petroleum Corporation of Delaware and Thomas Lorenzen, alleging that through the negligence of Thomas Lorenzen, who was an employee of the Mid-Continent Petroleum Corporation, and through no fault of his own, he was injured. Evidence was offered, and at the close of the plaintiff's case the defendants made a motion for a directed verdict, which was renewed at the close of all of the evidence. The lower court overruled the motion and submitted the case to the jury, which returned a verdict in the amount of $5,731. The defendants have appealed to this court.

The appellants argue that the lower court erred in overruling the following ground of the motion for a directed verdict, to wit:

"That there is no evidence in the record showing any negligence on the part of any of the defendants which was the proximate cause of the plaintiff's injury."

And as a separate ground also allege that the lower court erred in overruling the following ground of the motion for a directed verdict:

"That under the record the plaintiff claims that he went on the property of the defendant, Mid-Continent Petroleum Corporation of Kentucky for the purpose of protecting their property from a claimed peril of the said property. He was therefore a mere trespasser and this defendant is not liable to him for any act except such act as might be wanton, and the record is devoid of any testimony showing that there were any wanton acts of this defendant after he went upon this property."

We believe that both of these grounds can be discussed at the same time. The question of proximate cause has always been a troublesome one, the trouble arising not so much from the reason that it is difficult to formulate a rule as from the difficulty in the application of the rule to a particular case. There is no dispute in this record in regard to what happened at the bulk station of the Mid-Continent Petroleum Corporation. Its agent put in operation a pump driven by a gasoline engine to pump gasoline from a railroad tank car to its storage tank. He testified that he measured the amount of gasoline that was in the tank into which he was pumping the gasoline before he left the bulk station to go uptown on some business, and he figured out from a chart that there were so many gallons in the tank and that it would take so long to pump sufficient to fill it from the railroad car. He admits that he must have got the wrong figures on the chart. That the tank overflowed and the gasoline spread over the premises, including the pump house and in the air, through the negligence of the appellants, is not questioned. Gasoline was spraying and scattering about the neighborhood and on the pump house where the gasoline engine was operating. The record shows that the exhaust pipe of this gasoline engine that operated the pump extended through the wall of the pump house. It was at this time that Otto Johannsen, the appellee,

arrived at the bulk station of his employer, which was within 25 feet of the appellants' bulk station. He recognized the danger, sought to stop the pump, and before he escaped from the premises the fire broke out and he was burned. The question is: Is there evidence from which a jury could find that the negligence of the appellants was the proximate cause of the appellee's injury? If the gasoline had not been permitted to overflow from this tank and to spray upon the ground and the adjoining buildings there would have been no damage caused. Just what caused the fire is not definitely set out in the record. But the record does show that the gasoline engine was operating, that there was heat in the engine and in the exhaust pipe; and, of course, when gasoline comes in contact with heat, the heat ignites the gasoline and produces fire. In other words, the negligence of the appellants in having sprayed gasoline and a gasoline engine producing fire in close proximity on the premises caused the fire which injured the appellee. There was no other cause here. In their brief and argument the appellants say:

"It is submitted that the natural desire arising in the mind of any normal person to save the property of another which might be in danger, probably prompted the appellee to do something to stop the overflow of the gasoline, but it is submitted with all the earnestness at our command that what was done, was done in an extraordinarily negligent manner. Accordingly, measured by any of the yardsticks set forth in the definition of proximate cause contained in the Restatement of the Law of Torts above set forth [Restatement of the Law of Torts, Negligence, 1196, section 447, subsection (c)], and approved by this court in Blessing v. Welding, supra, the act of the appellant Lorenzen in allowing the tank to overflow was not the proximate cause of the injury to the appellee."

But it is interesting to note that the appellants do not set out in what other manner the appellee should have proceeded to stop the flow of oil. It would seem to us that the natural thing to do, especially to a man familiar with the situation, as was the appellee, was to stop the pump, and in order to do this, it was necessary to stop the gasoline engine which was operating the pump. This was exactly what the appellee did. But the

questions of proximate cause and whether or not he was a trespasser have been answered definitely by this court in the case of Liming v. Illinois Cent. R. Co., 81 Iowa 246, 252, 47 N. W. 66, 67. In that case a farmer had some horses in his barn. A prairie fire was approaching. A neighbor, seeing the peril in which the property of the farmer was being placed, entered the barn to remove the horses. While he was in the barn the fire arrived and he was injured. Because the case covers many of the propositions which confront us in this case, we quote at length:

"But it often happens that the wrongful act or negligence of a party would be harmless but for the voluntary act of the person injured, as in cases of injuries from defects in streets, sidewalks, roads and bridges; yet in a case of that kind the act of the person injured in traveling the defective way is not regarded as a new or independent cause of the accident which follows. If he be free from negligence he is entitled to recover for the injuries he sustains, for he was doing only what the law authorized, and what the corporation, responsible for the condition of the way, was bound to anticipate and provide for while the way remained open for travel. The negligence of the corporation is the proximate, although the act of the person injured is the more immediate, cause of the injury. 1 Suth. Dam. 62. One who, acting with reasonable prudence, voluntarily exposes himself to danger for the purpose of protecting the person of another, may recover for the consequent injuries he receives from the person whose wrong caused the injury to himself, and the danger to the person he sought to aid. Linnehan v. Sampson, 126 Mass. 506; Cottrill v. Railway Co., 47 Wis. 634; 3 N. W. Rep. 376; Railway Co. v. Crosby, 74 Ga. 737; Eckert v. Railway Co., 43 N. Y. 502. The same has been held to be true of one who under similar conditions is injured in an attempt to protect his own property. Wasmer v. Railway Co., 80 N. Y. 212; Rexter v. Starin, 73 N. Y. 601. In Eckert v. Railway Co., supra, it was said, in effect, that a person might expose himself to greater danger without negligence in attempting to save human life than he could in attempting to save property. It is not claimed that the right to recover in such cases depends in any

respect upon the legal liability of the person injured to do that which he was attempting to do when the injuries were received, but rather upon his moral obligation and right to do it.

"In this case the plaintiff did not receive the injuries of which he complains in any attempt to protect human life, nor in trying to save his own property. So far as we are advised by the record, he was under no legal obligation to protect the property of his neighbor; yet his attempt to do so was entirely lawful, and was most praiseworthy. If he had failed to make a reasonable effort to save it, he would have merited the censure and contempt of his neighbors; and this would have been so notwithstanding the fact that defendant may have been liable for all loss which could occur, and that what he accomplished would inure to its benefit. It is the duty of everyone, according to the requirements of an enlightened and just public sentiment, to use reasonable efforts to preserve the property of others from threatened destruction; and, as is well known, it is a duty which people generally are quick to discharge. The defendant could have foretold, with almost absolute certainty, when it set the fire in question, that plaintiff, being near, would use every reasonable means in attempting to save Ortman's horses from the flames, and there was nothing surprising or unusual in the attempt he made. Under the circumstances of the case, it was the natural and probable result of the wrong of defendant. A person would not be justified in exposing himself to as great danger in saving property as he would in saving human life, and whether the person injured acted with reasonable prudence would, in most cases, be a question of fact depending upon the circumstances under which the act was done. In Harris v. Township of Clinton, 64 Mich. 447; 31 N. W. Rep. 425, it was said that 'it is not a universal rule that the defendant is excused from liability merely because the plaintiff, knowing of the danger caused by the defendant's negligence, voluntarily incurs that danger. If the defendant has so acted as to induce the plaintiff, acting with reasonable prudence, to incur the danger, * * * the defendant is liable.' "

Clearly, under the above-quoted case, the negligence of the appellants in permitting the gasoline to spray and overflow,

and in having on the premises hot parts of an operating gasoline motor, was the proximate and direct cause of the injury suffered by the appellee. The above-quoted case also disposed of the question of whether appellee was a trespasser or not. The appellee was in a place where he had a right to be, when he was suddenly confronted by this danger caused by the negligent acts of the appellants. He knew that his employer's bulk plant was near. He knew that they were within the city limits of Denison, that adjacent and near by were houses and dwellings and buildings where people lived and did business; and he did what any ordinary man would do to use reasonable efforts to prevent the destruction of the property of his employer, of his neighbors, and of the citizens of the community in which he lived. The court was right in overruling both grounds of the motion for a directed verdict.

It is next argued that the lower court erred in overruling the following ground of the motion for a directed verdict:

"That the record shows affirmatively that the plaintiff was attempting to protect the property of others and that in so doing was guilty of contributory negligence as a matter of law, in the manner in which he acted, under the facts shown in the record."

No cases are cited to sustain appellants' contention. In Restatement of the Law of Torts, Negligence, 1241, section 472, we find this statement:

"It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm."

No complaint is made by the appellants in regard to the instruction on contributory negligence which was given by the court, but they argue that appellee was well acquainted with the danger of gasoline and gasoline fumes, having been employed for a period of some 12 years in the handling of gasoline, and therefore he knew better than others of the danger that confronted him when he entered upon the premises of the Mid-Continent Petroleum Corporation. It is true, of course,

that the situation was dangerous, and probably no one knew that better than the appellee himself, and yet at the time he entered on the premises no fire had occurred; he was confronted with an emergency. He knew that the spraying and overflowing of the gasoline had to be stopped. Appellants suggest that there were other means of doing it than cutting off the pump. What other means he might have taken do not appear in the record. It was the operation of the pump that was forcing the gasoline from the railroad car into the tank, which was then overflowing. The question of contributory negligence is one generally for the jury, and, under the facts as shown by this record, with the emergency which confronted this appellee, it was clearly for the jury to say whether he acted as an ordinarily prudent person in entering the premises and in stopping the gasoline engine to prevent the overflowing of gasoline before the fire occurred. Men in such a situation are not required to reach the same conclusion which others, by the exercise of hindsight and after plenty of time for deliberation, might be able to suggest as a better course of conduct. We call attention again as authority for the submitting of this question to the jury, the case of Liming v. Illinois Cent. R. R. Co., supra.

It is argued that the court erred in overruling ground 1 of the motion of the Mid-Continent of Delaware for a directed verdict, which we quote:

"1. That the record herein shows that the only manner in which this, the Delaware corporation, could be held liable would be if it be found that the Kentucky corporation at the time of the injury complained of was acting as an instrument of the Delaware corporation; but the record, as a matter of law, shows that at that time the Kentucky corporation was not an instrumentality of the Delaware corporation so as to hold the Delaware corporation liable herein; and * * *"

Before discussing this error, we believe it advisable to review briefly some of the facts. The bulk station operated in Denison, Iowa, at the time of this accident, which happened in April of 1936, was carried on under the name of the Mid-Continent Petroleum Corporation, not of Delaware nor of Kentucky, but simply as the Mid-Continent Petroleum Corporation.

It appeared after the suit was commenced that there was a Mid-Continent Petroleum Corporation organized and created under the laws of the state of Delaware, and there was also a Mid-Continent Petroleum Corporation organized and incorporated under the laws of the state of Kentucky; that the Mid-Continent Petroleum Corporation of Delaware owned all of the stock in what is known as the Mid-Continent Petroleum Corporation of Kentucky, and a few shares of the Kentucky corporation were transferred to the officers of the Delaware corporation so that they might qualify as officers of the Kentucky corporation. Both corporations had the same officers; both operated out of the same office; both were engaged in the same business of selling what is referred to as Diamond petroleum products. The Kentucky corporation was the operating corporation and was authorized to do business in Iowa in 1926. The notice in this cause of action was served on the agent of the Mid-Continent Petroleum Corporation at Denison, Iowa. Two Mid-Continent Petroleum corporations appeared and moved to transfer to the federal court, and on the 14th day of January 1937, the appellee voluntarily dismissed that case. On the 16th day of April 1938, the appellee filed another action in the district court of Crawford county, Iowa, against the Mid-Continent Petroleum Company and Thomas Lorenzen, setting forth substantially the same cause of action as in the case which had been dismissed. At that time, Thomas Lorenzen was not employed by either corporation and the original notice thereof was served upon Ronald Woolsencroft, an employee of the Delaware corporation. At the time of filing this action, the Kentucky corporation was not doing business in the state of Iowa, as its business had been concluded on the 1st day of January 1937, owing to its dissolution prior to that time. The Kentucky corporation filed a petition for removal to the federal court, which was remanded to the district court of Crawford county on June 30, 1938, and on July 19, 1938, the Kentucky corporation filed a special appearance and motion to quash in the district court of Crawford county. The motion to quash was sustained by the trial court, from which ruling the appellee herein appealed to this court, which affirmed the lower court.'

See Johannsen v. Mid-Continent Pet. Corp., 227 Iowa 712, 288 N. W. 911. The Delaware corporation, to wit, the Mid-Continent Petroleum Corporation of Delaware, on the 12th day of August 1938, filed a special appearance and on the 26th day of September 1938, the appellee filed an amended petition, setting forth and alleging that the Kentucky corporation was an instrumentality of the Delaware corporation. The Delaware corporation then appeared and filed an answer. The issue which was presented to the jury was whether or not the Kentucky corporation, in operating the plant at Denison, Iowa, when appellee's injuries were sustained, did so as an instrumentality of the Delaware corporation, and it is the claim of the appellants that the lower court erred in not holding as a matter of law that the Kentucky corporation was not the instrumentality of the Delaware corporation. The appellants, in a very able and lengthy discussion, cite many cases to sustain their contention. No good could possibly be accomplished by reviewing these cases, for the appellants in their brief concede, we quote:

"We are not unmindful of the numerous cases announcing the rule that under certain circumstances the relations between a parent and a subsidiary corporation may be such that the court will disregard the separate entities of the two corporations and regard them as a single corporation. However, the evidence and the record herein are such as to render said authorities inapplicable to the case at bar."

We quote from 50 A. L. R. 612, 613:

"But where a corporation exercises actual control over another, operating the latter as a mere instrumentality or tool, it is liable for the torts of the corporation thus controlled. Joseph R. Foard Co. v. Maryland (1914; C. C. A. 4th) 135 C. C. A. 497, 219 Fed. 827; United States v. United Shoe Machinery Co. (1916; D. C.) 234 Fed. 127; Portsmouth Cotton Oil Ref. Corp. v. Fourth Nat. Bank (1922; D. C.) 280 Fed. 879, affirmed in (1922; C. C. A. 5th) 284 Fed. 718; Birmingham Realty Co. v. Crossett (1924) 210 Ala. 650, 98 So. 895; Auglaize Box Board Co. v. Hinton (1919) 100 Ohio St. 505,

816

126 N. E. 881. And see opinion of Cardozo, C. J., on motion for reargument in the reported case (Berkey v. Third Ave. R. Co. ante, 599).

"Thus, where a stevedoring company was organized and controlled and its affairs so conducted as to make it a mere instrumentality of another corporation, the latter is liable for damages resulting from the negligence of a servant of the former. In this case, the two companies had the same officers; the stevedoring company handled no funds, except through the corporation; its losses were paid by the corporation, and its profits were kept by the latter as a charge for managing the business. Under these circumstances, said the court, the two corporations must be regarded, as to the outside public, as identical. Joseph R. Foard Co. v. Maryland (Fed.) supra.

"Where a realty company organized a bus line company for the purpose of providing transportation to and from its subdivisions, the bus line company being so organized and controlled, and its affairs so conducted, as to make it a mere instrumentality of the realty company, the latter is liable on a judgment against the bus line company for personal injuries resulting from the negligence of one of its employees. Birmingham Realty Co. v. Crossett (1924) 210 Ala. 650, 98 So. 895.

"United States v. United Shoe Machinery Co. (1916; D. C.) 234 Fed. 127, was an action to enjoin the defendant corporation and its subsidiaries from enforcing, or attempting to enforce, certain provisions of leases alleged to be in violation of the Clayton Act. Three companies were made parties defendant, and the allegations of the bill were that the entire capital stock of the Maine company was owned by the New Jersey corporation, and that the New Jersey corporation owned 98½ per cent of the capital stock of the New Jersey company; that the officers and directors of the three corporations were practically the same, all of them serving as such officers and directors in at least two of the corporations, and one in all three. But it was claimed that, as each corporation was an entity, and as there was no charge of conspiracy, the mere fact that the New Jersey corporation was the owner of the capital stock of the Maine company, which was the only offender, did not justify

their being made parties defendant. In answer to this contention the court said: 'Whatever may have been the views of the courts in the early days of corporate existence, when there were but few corporations, and they mostly confined to business of quasi public nature, at this date courts, and especially courts of equity, will look behind the corporate fiction, and if it clearly appears that one corporation is merely a creature of another, the latter holding all the stock of the former, thereby controlling it as effectively as it does itself, it will be treated as the practical owner of the corporation, when necessary for the purpose of doing justice. . . . From the allegations in the complaint it is beyond question that the Maine company is merely a subsidiary of the New Jersey company, and that both are under the absolute control, by reason of its stock ownership, of the New Jersey corporation. The acts of one are the acts of all these corporations; in fact, it may truthfully be said that they are the acts of the United Shoe Machinery Corporation. This being the case, they are properly joined as defendants.' "

Appellants call our attention to the case of First Trust JSL Bk. v. Galagan, 220 Iowa 173, 176, 261 N. W. 920, 921, wherein Justice Richards, speaking for this court, said, we quote:

"We think the question has been answered adversely to plaintiff's contention by our holding in Weitz Sons v. U. S. F. & G. Co., 206 Iowa 1025, 219 N. W. 411. In that case the members of a partnership owned 99.8 per cent of the capital stock of, and were the directors of, a corporation; both concerns having offices in the same building. The point of attack was a contract between the partnership and the corporation, a third party claiming that the partnership and corporation were identical. It was held that presumptively the corporation was a distinct legal entity, and under the record it was clearly established to be such; the facts being that the corporation was carrying on a business separate and distinct and of a different character than that carried on by the partnership. It was held that the corporation was not only not a fiction, but was a distinct, separate, and legal entity, and there was no complete identity either of ownership or of interest. We are satisfied

that the fact situation and the relationship between the bank and the Realty Company, already set out above, does not warrant the conclusion plaintiff suggests, particularly in the absence of any evidence of fraud in the relationship between the bank and the Realty Company. The bank and the Realty Company were evidently separate and distinct entities.''

It will be noted that this court said in the quoted case that the bank and the realty company were evidently separate and distinct entities. What does this record show in regard to whether or not the Delaware corporation had actual control of the Kentucky corporation and operated it as a mere instrumentality of the Delaware corporation? One was the Mid-Continent Petroleum Corporation of Delaware and the other the Mid-Continent Petroleum Corporation of Kentucky, but it is interesting to note that in the sign over this place of business, and, as far as this record shows, in other places in Iowa, it was simply referred to as the Mid-Continent Petroleum Corporation, and people dealing with it had no means of knowing which corporation they were dealing with. The Delaware corporation owned all of the stock of the Kentucky corporation with the exception of about 20 shares of stock transferred to the directors of the Delaware corporation so that they might qualify as directors and officers of the Kentucky corporation. They sold the same brand, to wit, the Diamond brand. They used the same offices. They had the same officers. They used the same stationery. Mail was received and dispatched from the same place in Tulsa, Oklahoma. So completely were the two operated as one business that the manager of the plant at Denison never knew that there was ever any change in the ownership of the property at that point. In making income-tax returns, both corporations were treated as one business as long as the law would permit. In making reports to the stockholders, they were treated as one business. The Kentucky corporation was the operating part of the Delaware corporation. The president of the Delaware corporation, in reporting to his stockholders, stated that it is engaged in the business of producing and refining oil and that its marketing operations have been carried on through the Kentucky corporation. In other words, the

Delaware corporation was at all times in charge of the Kentucky corporation and was running the entire business. It was merely using the Kentucky corporation as a vehicle or instrument with which to carry out its business. Finally, for reasons not necessary to review, the Delaware corporation decided to dissolve the Kentucky corporation. All that was necessary to do was to cancel the stock, invest the ownership of the property in the Delaware corporation, and the business went on, not only without interruption but apparently without any knowledge upon the part of the very people who were transacting the business that a change in ownership had occurred. In fact, the agent of the Delaware corporation at Denison, Iowa, testified that he did not know there were two such corporations, and that after the date when the Delaware corporation dissolved the Kentucky corporation it was carried on identically as it had been before and he did not know that there had been a change.

It is the taking into consideration of all of the facts as shown by this record that made it a question for the jury to determine whether or not the Delaware corporation used the Kentucky corporation as an instrumentality for the carrying on of the business of the Delaware corporation at Denison, Iowa.

It is next argued that the court erred in the giving of instruction No. 10 and instruction No. 12, which are as follows:

"10. The plaintiff herein is not seeking to recover against the defendant, Mid-Continent Petroleum Corporation of Delaware, because of any agreement made after the fire in question by which the defendant, Mid-Continent Petroleum Corporation of Delaware undertook to assume such a liability * * *. The liability, if any, of the Mid-Continent Petroleum Corporation of Delaware must be because it was the corporation for whom and in whose behalf the Kentucky Corporation was acting as explained to you in Instruction No. 12.

"12. As heretofore told you in these instructions, plaintiff is seeking to recover against the defendant, Thomas Lorenzen and also the defendant, Mid-Continent Petroleum Corporation of Delaware.

"If plaintiff is not found entitled to recover against the defendant, Thomas Lorenzen, then in no event would plaintiff

be entitled to recover against the Mid-Continent Petroleum Corporation of Delaware; but if you find that the plaintiff is entitled to recover against the defendant, Thomas Lorenzen, then in order to be entitled to recover also against the Mid-Continent Petroleum Corporation of Delaware the burden of proof is upon the plaintiff to establish, by a preponderance of the evidence, that the Mid-Continent Petroleum Corporation of Kentucky, then operating the plant at Denison, Iowa, where the fire in question occurred, was so operating such plant for and in behalf of the Mid-Continent Petroleum Corporation of Delaware and not for and in behalf of itself and that it was then and there a mere agent and instrumentality of such Delaware corporation, solely in whose behalf the Kentucky corporation was operating the plant in question at Denison, Iowa; and if plaintiff has established by a preponderance of the evidence such matters, then in such event the Mid-Continent Petroleum Corporation of Delaware would be chargeable with the acts of Thomas Lorenzen and would be liable in the case to the same extent as the defendant Lorenzen; and if, under such circumstances, you find plaintiff entitled to recover against the defendant Lorenzen, you should also allow him to recover in the same amount against the defendant Mid-Continent Petroleum Corporation of Delaware. But if the plaintiff has failed to establish by the evidence the matters and things above set forth in order to recover against the Mid-Continent Petroleum Corporation of Delaware, then, in such event, your verdict should be for the Mid-Continent Petroleum Corporation of Delaware.''

The only objection urged to these instructions is that the court did not adequately define to the jury the term ''instrumentality.'' It will be noted from the instruction that the court imposed upon the appellee the burden of proving by a preponderance of the evidence that the Kentucky corporation ''was so operating such plant for and in behalf of the Mid-Continent Petroleum Corporation of Delaware and not for and in behalf of itself and that it was then and there a mere agent and instrumentality of such Delaware corporation, solely in whose behalf the Kentucky corporation was operating the plant in question at Denison, Iowa * * *.''

Reading the instruction, we cannot believe that there was any doubt as to just exactly what the court meant, nor was there any request on the part of the appellants to give any instruction on this question. The instruction constitutes a definition of what must be shown to entitle the appellee to recover. We find no error.

 It is argued that the court erred in admitting certain evidence over objection; it was part of a stipulation which was entered into. The evidence had to deal with certain statements that the Delaware corporation had assumed the liability in the instant case of the Kentucky corporation. We do not find it necessary to pass upon this question because the court did not submit to the jury the issue as to whether or not the Delaware corporation had assumed by contract the debts of the Kentucky corporation. In fact, the lower court specifically instructed the jury that the appellee is not seeking to recover against the Mid-Continent Petroleum Corporation of Delaware because of any agreement made after the fire in question by which the Mid-Continent Petroleum Corporation of Delaware undertook to assume such a liability. Whether the evidence was admissible or not we do not pass upon, but clearly it was not prejudicial in view of the fact that the jury was specifically instructed that appellee could not recover on the theory of assumed liability.

 The appellants argue that the lower court erred in overruling ground No. 8 of the motion for a new trial, which is as follows:

"'That the verdict cannot be sustained, for the reason that the minds of the jury were poisoned, impassioned, inflamed and prejudiced, as against the defendant, Mid-Continent Petroleum Corporation of Delaware, by the unfair, improper, intemperate, prejudicial, unjustified and vicious statements made in argument to the jury by * * * one of the attorneys for the plaintiff, * * *'" (and then quotes the statement made).

There is not before us a complete record of what the lawyers on both sides said to the jury in their closing arguments. Only that part which is objected to is submitted to us. There is the affidavit of counsel for appellee that the argument was made in

reply to an argument made by appellants' counsel to the jury. To properly pass upon the question, we must have sufficient of the record before us so that we will know just exactly what was said at that time. It is also to be noted that the appellants, when the statement complained of was made by the attorney for the appellee in his closing argument, only asked that the jury be admonished, and this the court did. Often, in arguments to juries, attorneys step aside from the record and make statements which it would be better if they had not made. Certain statements made in this case should not have been made, but in view of the record, and also on account of the fact that no error is alleged that there was an excessive verdict, we do not believe we would be justified in the reversal of this cause on this ground.

Many other questions are argued, all of which have been given careful consideration. Both sides were represented by able and learned counsel. It was tried before the late Judge Hutchison, who served with distinction and honor as a trial judge for many years in this state. The case was well tried. It was properly submitted to the jury, and it necessarily follows that it must be, and it is,—Affirmed.

All JUSTICES concur.