JOSEPH D. CLAYTON and CLAUDE K. CLAYTON, joint administrators of estate of Bonnie Wolf, deceased, appellants,
v. FLOYD BLAIR, appellee.

No. 50727.

(Reported in 117 N.W.2d 879)

NOVEMBER 13, 1962.

Maurice L. Test, Stanford L. Trumbower, Kenneth L. Potter, and McMullin, Test & Baird, all of Des Moines, for appellants.

Paul Ahlers, Roger A. Witke, and Bannister, Carpenter, Ahlers & Cooney, all of Des Moines, for appellee.

SNELL, J.—Plaintiffs' decedent died in an apartment house fire. Plaintiffs-administrators seek damages from defendant-landlord.

Mrs. Bonnie Wolf, plaintiffs' decedent, and her daughter, Loretta Jones, were tenants in a third-floor apartment owned by defendant. Utilities, including electricity, were furnished by defendant-landlord.

At about 8:30 a.m. on June 9, 1959, a fire occurred in the building resulting in the death of Mrs. Wolf and her daughter, Mrs. Jones. The fire apparently started in or above the ceiling of the apartment below the apartment occupied by plaintiffs' decedent. Plaintiffs alleged negligence of defendant incident to the electrical wiring in the building, proximate cause, decedent's freedom from contributory negligence and damage. Upon submission the jury found for defendant.

Plaintiffs on appeal claim error in the trial court's refusal of a requested instruction on the rescue doctrine and giving of an improper instruction on contributory negligence.

We are concerned only with these two problems. Questions of defendant's negligence, proximate cause and measure of damage are not before us.

I.   It would appear from the evidence that Mrs. Wolf was the first of the building's occupants to become aware of the fire and the danger. She pounded on the door of the second-floor apartment below her own, awakened the lady occupant therein, warned of the fire, and urged the occupants to get out. In response to the warning the occupants, a lady and three children, one an infant, all previously asleep, escaped without difficulty.

Meanwhile Mrs. Jones, daughter of Mrs. Wolf, knocked on the door, awakened the occupants of a third-floor apartment and warned of the fire. The occupants so warned, dressed and about five minutes after the warning left safely by way of the front stairs.

It appears without dispute that these other tenants just men-

tioned who were so warned escaped from the building without difficulty.

It also appears from the testimony of the fire marshal, developed on cross-examination by defendant's counsel, that had it not been for Mrs. Wolf and Mrs. Jones awakening the occupants of the building there might have been many other lives lost.

From this testimony it appears without dispute in the record that upon discovery of the fire and the danger therefrom Mrs. Wolf and Mrs. Jones busied themselves awakening and warning other tenants.

What either Mrs. Wolf or Mrs. Jones did after warning others does not appear from the testimony of those in the building at the time. Apparently no one knows. They were never again seen alive. The physical facts show that Mrs. Wolf went back upstairs and joined her daughter. What prompted her return to greater danger and what she was attempting to do can only be surmised. The dead bodies of the two women were found in a third-floor apartment with a fire escape across the hall from their own apartment.

Mrs. Wolf had two purses and some dresses over her arm. Her clothing showed no evidence of burning or charring. The body of Mrs. Jones was near the door. Her clothing had been burned and her body showed evidence of charring. Mrs. Jones had been somewhat crippled by infantile paralysis but apparently was ambulatory.

Why Mrs. Wolf went back upstairs after warning tenants on the floor below does not appear. When last seen, by anyone still alive, she was warning others of danger. Under the no-eyewitness rule which the court explained in an instruction, the jury might infer that Mrs. Wolf was exercising ordinary care in going back upstairs for reasons now unknown. Under the sudden emergency rule, also explained in an instruction, she was not held to the same accuracy of judgment as if she had time for deliberation. It was proper for the court to instruct on both rules of law.

II. Mrs. Wolf's last known activities prompted plaintiffs to ask for an instruction on the doctrine of rescue.

The doctrine of rescue arises in questions of proximate cause

and contributory negligence. In other words, did the act of the injured party so intervene as to break the chain of causation from defendant's negligence, or constitute such contributory negligence as to bar recovery?

The rule is concisely stated in Restatement of the Law of Torts, Negligence, 1241, section 472, quoted with approval in the Johannsen case, infra.

"It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm."

The doctrine has been firmly established as part of the law of Iowa for over 70 years.

In Liming v. Illinois Central Railroad Co., 81 Iowa 246, 47 N.W. 66, it was alleged that a grass fire, started through negligence of defendant, threatened a barn containing some horses belonging to a third person. Plaintiff, in attempting to rescue the horses, was burned. The court held that plaintiff's voluntary exposure of himself to danger did not bar his recovery.

The case has been frequently cited in Iowa and by text writers.

In Johannsen v. Mid-Continent Petroleum Co., 232 Iowa 805, 810, 811, 5 N.W.2d 20, 23, the Liming case is quoted at some length. From this we quote excerpts:

"But it often happens that the wrongful act or negligence of a party would be harmless but for the voluntary act of the person injured, * * *. One who, acting with reasonable prudence, voluntarily exposes himself to danger for the purpose of protecting the person of another, may recover for the consequent injuries he receives from the person whose wrong caused the injury to himself, and the danger to the person he sought to aid. [Citations] The same has been held to be true of one who under similar conditions is injured in an attempt to protect his own property. [Citations] * * * a person might expose himself to greater danger without negligence in attempting to save human life than he could in attempting to save property. It is not claimed that the right to recover in such cases depends in any respect upon the legal liability of the person injured to do that

which he was attempting to do when the injuries were received, but rather upon his moral obligation and right to do it.

"In this case the plaintiff did not receive the injuries of which he complains in any attempt to protect human life, nor in trying to save his own property. So far as we are advised by the record, he was under no legal obligation to protect the property of his neighbor; yet his attempt to do so was entirely lawful, and was most praiseworthy. If he had failed to make a reasonable effort to save it, he would have merited the censure and contempt of his neighbors; and this would have been so notwithstanding the fact that defendant may have been liable for all loss which could occur, and that what he accomplished would inure to its benefit. It is the duty of everyone, according to the requirements of an enlightened and just public sentiment, to use reasonable efforts to preserve the property of others from threatened destruction; and, as is well known, it is a duty which people generally are quick to discharge."

Later in the Johannsen case the opinion says:

"The question of contributory negligence is one generally for the jury, and, under the facts as shown by this record, with the emergency which confronted this appellee, it was clearly for the jury to say whether he acted as an ordinarily prudent person in entering the premises and in stopping the gasoline engine to prevent the overflowing of gasoline before the fire occurred. Men in such a situation are not required to reach the same conclusion which others, by the exercise of hindsight and after plenty of time for deliberation, might be able to suggest as a better course of conduct. We call attention again as authority for the submitting of this question to the jury, the case of Liming v. Illinois Cent. R. R. Co., supra."

Professor Clarence M. Updegraff in an article in 27 Iowa Law Review 2, in discussing rescue activities of a plaintiff, says on page 28:

"* * * In such cases the only inquiry should be whether the conduct of the plaintiff was 'natural' under the circumstances, which is to be ascertained by a counter-chronological examination of the facts. Here the term 'natural' must be taken to embrace those qualities of human nature leading to risk-taking in an effort

to preserve property, to rescue other persons, or to save oneself. It necessarily includes actions which these well recognized and familiar human feelings bring about. Thus 'natural' conduct includes not only cool and well-reasoned action but also the frantic, excited and apparently illogical movements which are too commonly exhibited by a large percentage of human beings in moments of stress.

"In these situations, the defendant may negligently have exposed the person or property of another to unreasonable risk of loss or destruction. 'Natural' instincts will move some persons to make efforts at rescue. The movements of the rescuer may not be well judged and may result in harm either to the goods, to the person endangered by the defendant, or to the rescuer himself. In any such case the defendant will be held liable, for the 'natural' conduct of the rescuer leaves no break or gap in the chain of causation."

22 Am. Jur., Fires, section 53, says:

"Attempt to Extinguish Fire or to Save Life or Property.— It is not per se negligence for a person to be in a place of danger when a conflagration is raging, and the life or safety of other human beings or the safety of property is endangered. Under such circumstances, a person may lawfully enter upon another's premises in order to save others from personal injury or loss of life. He is not regarded as a trespasser, nor does the law impute negligence to an effort made in good faith to save life, or to secure the safety of persons or property. Persons called upon to act in these emergencies are not required to exercise the same degree of care and caution as under ordinary circumstances."

The Liming case, supra, is cited in a comparatively recent annotation in 42 A. L. R.2d 494, 498, in support of the proposition that the law does not impute negligence to an effort made in good faith to save life, or secure the safety of property or persons.

In the instant case plaintiffs' decedent had been warning others of danger. While so acting she was within the doctrine of rescue. From the second floor of the building she returned to the third floor. Why we do not know, but we do know that her daughter and her personal belongings were still there. We think

the doctrine of rescue was in the case and that there was error of omission in the instructions. The jury was entitled to consider the issue under a proper instruction.

We do not approve plaintiffs' requested instruction. It was too broad and too heavily weighted in favor of plaintiffs, but it did alert the trial court to the need of a proper instruction. Oltmanns v. Driver, 252 Iowa 1066, 1070, 109 N.W.2d 446.

■ III. At the request of defendant the trial court instructed the jury on contributory negligence as follows:

"You are instructed that the burden of proof is upon the plaintiffs to establish that Bonnie Wolf was free from contributory negligence which in any manner or degree contributed to her own death. If you find that Bonnie Wolf had a clear avenue of escape from the apartment house in question, after being apprised of the danger, and failed to exercise reasonable care for her own safety by utilizing such avenue of escape, and that such failure on her part contributed directly in any manner or degree to her own death, then your verdict must be for the defendant."

This is a clear and well worded instruction that might have been appropriate in the absence of evidence of rescue efforts. However, in the light of the evidence as to decedent's activities and rescue efforts and our conclusions expressed in Division II, the giving of this instruction was error. For all practical purposes it told the jury to find for defendant. The evidence showed without dispute that decedent had been on the second floor warning others of danger. Other tenants apprised of danger later than decedent did escape.

There was time for decedent to walk out of the building in safety had she availed herself of the opportunity. The instruction did not give the jury the right to determine that she might have been justified in delaying her flight from danger.

It is true the instruction uses the words "and failed to exercise *reasonable care* [emphasis supplied] for her own safety by utilizing such avenue of escape" but nowhere in the instructions is there the slightest suggestion that she might have been exercising reasonable care even though delayed by efforts at rescue. The instruction diluted to the point of ineffectiveness the instruc-

tions on sudden emergency and the no-eyewitness rule referred to in Division I as proper.

IV. Instruction No. 6 as it appears in the record sets out the necessary elements for recovery by plaintiffs. The second proposition as stated is completely wrong. We assume it is a typographical error as it is not mentioned in argument. The error is obvious but not urged. There is no need for discussion by us.

Because of the errors pointed out in Divisions II and III the case is—Reversed and remanded for a new trial.

All JUSTICES concur except STUART, J., who takes no part.