GLADYS KLUNENBERG, appellant, v. GILBERT ROTTINGHAUS, appellee.

No. 51336.

(Reported in 129 N.W.2d 68)

732

June 9, 1964.

Robert J. Pattee, of Independence, for appellant.

Wendell A. Holmes of Reed & Holmes, of Waterloo, for appellee.

SNELL, J.—Plaintiff was injured when she fell while helping her husband corral defendant's cattle. The cattle had strayed from defendant's field. Following a jury verdict for plaintiff the trial court sustained defendant's motion for judgment notwithstanding the verdict and plaintiff appeals.

In considering the propriety of the judgment notwithstanding the verdict the premise is the same as a directed verdict. We give the plaintiff's evidence the most favorable construction it will reasonably bear. Citations unnecessary. See Rule of Civil Procedure 344(f)2.

On December 18, 1960, defendant was the contract purchaser and operator of a 280-acre farm just south of Dunkerton in Black Hawk County.

The house, building lots and yard are on the east side of the road facing paved north and south Highway No. 281.

Plaintiff and her husband had nothing to do with the farmland. They occupied as tenants the house, lots and garden area for which they paid $50 per month rent. As credit on the rent they received $1 per day for feeding and watering 28 feeder cattle owned by defendant and kept in the feedlot and barn. This work was ordinarily done by plaintiff's husband but plaintiff fed the cattle occasionally when her husband was away. The watering system was automatic.

As a part of the arrangement they were to call defendant if the cattle were out and were to call a veterinarian if the cattle were sick. They faced some difficulty in making calls as they had no telephone.

Across the highway to the west of defendant's farm is a cemetery. A driveway entrance to the cemetery is about 500 feet south of the driveway to the house occupied by plaintiff and her husband. The cemetery driveway is near the south boundary. The cemetery has a frontage of 250 feet along the highway.

From the south boundary northward along the highway for about 125 feet there is a fence. From the end of the fence northward there is a cement block retaining wall. The wall is about five feet high. The top is about flush or slightly above the level of the cemetery ground. At about midpoint steps with handrails provide pedestrian entrance from the highway over the wall to the cemetery.

Plaintiff had never visited the cemetery but was familiar with the fence and wall through use of the highway and living in proximity thereto.

Defendant, during the latter part of November 1960 and after his corn had been harvested, turned the cattle previously confined in the feedlot into the cornfield to glean the field. Water was available. There is some dispute as to the duties of plaintiff and her husband thereafter, but in any event the duties were minimal.

Defendant testified that he inspected and repaired the field fences but they later proved to be neither substantial nor sufficient to restrain cattle.

At about 2 a.m. on December 18 a passing motorist aroused plaintiff's husband and said cattle were on the road. Plaintiff heard the conversation. Her husband went outside, took their car and attempted to drive the cattle back into the yard. Plaintiff testified:

"I could see through window husband was having trouble, that he needed someone to stand and block off driveway to keep them from going north on highway. Some of them were on highway when I saw them at that time. My husband came in. He wanted me to come out by the driveway and head them off.

I had already assumed that I'd have to get up and help. I could see that one person couldn't get them in alone. He came in and asked me to come out and help, which I proceeded to do. By time I went out there the cows had congregated further south, on the highway and had entered this—I don't know at that time where they were; but he was driving them with the headlight, and honking the horn; and in the meantime I waited up by the drive for just a few minutes anyway; but the cows were not coming."

Some of the cattle had entered the cemetery.

Plaintiff heard her husband driving cattle out of the cemetery with his car. Plaintiff "went down to view the situation." She walked into the cemetery. She thought she "would go chase" some cattle in the southeast corner of the cemetery. In the meantime her husband was having some success in driving cattle out of the cemetery. Plaintiff's "first impulse" was to keep the cattle from going farther south on the highway. She wanted to "head them off from the highway." She ran north along the inside of the cemetery fence to the place where the fence ended and the wall began. At that place she turned to her right and ran over the top of the wall into space. She landed in the shallow ditch at the foot of the wall and was injured.

To support her claim for recovery plaintiff alleged defendant's negligence, proximate cause, her own freedom from contributory negligence and damage. In support of her allegations she relies heavily on the "rescue doctrine."

I. The only charge of negligence made against defendant and submitted to the jury was failing to restrain his cattle from running at large.

Section 188.2, Code of Iowa, provides: "All animals shall be restrained by the owners thereof from running at large."

The jury was instructed that failure to comply with the statute would constitute prima facie evidence of negligence rebuttable by evidence of reasonable and ordinary care and under the circumstances.

The instructions were proper.

In Ritchie v. Schaefer, 254 Iowa 1107, 120 N.W.2d 444, we considered this problem and reviewed the authorities.

■ In the case before us defendant's cattle were at large. Defendant's evidence as to his care of and attention to his fences was received. The jury verdict for plaintiff necessarily included a finding of negligence incident to defendant's fences. Further review by us of the question of defendant's negligence is unnecessary.

II. In attempting to meet the burden of proof as to proximate cause and freedom from contributory negligence plaintiff's theory stretches the chain of causation beyond the breaking point.

Plaintiff had no duty to get up in the middle of the night to round up defendant's straying cattle. Defendant owed no duty to protect plaintiff from running off the top of the cemetery retaining wall. The wall was not a hazard created by defendant or in anyway under his control, but it was one known to plaintiff.

Plaintiff was asked by her husband "to come out by the driveway" and divert the cattle into the yard as he drove them down the road. When the cattle did not come she left her station. She went to the cemetery by its regular driveway to "view the situation", thought she "would go chase" cattle in the corner, changed her mind and started back to the place her husband had asked her to stand. She did not use either cemetery entrance. She ran along the fence to its end and then turned to her right and went over the wall. She either forgot or paid no attention to where she was.

In considering the sufficiency of the evidence to generate a jury question certain basic rules relied on by plaintiff must be kept in mind.

Plaintiff's fall from the cemetery wall was not a foreseeable result of defendant's failure to detect and replace decayed fence posts across the road and some distance away, but foreseeability is not necessary.

■ To be proximate negligence need not be the sole cause of an injury. Concurrent negligence may be a proximate cause. These rules are so well settled as to need no citation of authority. For the customary instructions on this subject see Iowa Uniform Jury Instructions Nos. 2.6, 2.8 and 2.8a.

An intervening agency for which a defendant is not responsible does not necessarily relieve him from liability for his negligent act. If the original wrong concurs with the intervening cause and both act proximately both may be proximate causes.

Where a subsequent act is relied upon as an independent intervening cause it will not have that effect if reasonably foreseeable. Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 1387, 15 N.W.2d 286.

It is not necessary that the consequences of a defendant's negligence should have been foreseen. "* * * It is sufficient if the injuries are the natural, though not necessary or inevitable, result of the wrong." Chenoweth v. Flynn, 251 Iowa 11, 16, 99 N.W.2d 310, 313.

When the negligence is too remote from the injury the chain of causation breaks. The breaking point is not easy to determine. In Chenoweth v. Flynn, supra, loc. cit. 17, 18, we said:

"It is a rule too well established to require the citation of authority that the question of proximate cause is generally for the jury to determine, although the line of demarcation between what is sufficiently proximate and what is too remote is often a thin one. If, upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable and improbable in light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created."

In Blessing v. Welding, 226 Iowa 1178, 1183, 286 N.W. 436, 439, we quoted Restatement of the Law of Torts as follows:

" 'The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

" '(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

" '(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

" '(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.' "

In McClure v. Richard, 225 Iowa 949, 954, 282 N.W. 312, it is said that the defendant's negligence is not deemed the proximate cause of the injury when the connection is actually broken by a responsible cause.

Proximate cause is ordinarily for the jury, but in the case before us defendant's negligence was too remote and there were too many intervening acts to support a finding of proximate cause. The case fails to meet any recognized test.

Freedom from contributory negligence is ordinarily for the jury, but here it cannot be seriously contended that plaintiff has made any showing in meeting her burden.

To meet her burden in the fields of proximate cause and contributory negligence plaintiff relies on the "rescue doctrine."

III. In two recent companion cases we have considered the doctrine of rescue. See Clayton v. Blair, 254 Iowa 372, 117 N.W.2d 879, and Clayton v. Blair, 255 Iowa 700, 123 N.W.2d 896. Our reference will be to the case appearing in 254 Iowa.

In the Clayton case we recognized the doctrine as firmly established for many years. We reviewed and quoted the authorities. We said:

"The doctrine of rescue arises in questions of proximate cause and contributory negligence. In other words, did the act of the injured party so intervene as to break the chain of causation from defendant's negligence, or constitute such contributory negligence as to bar recovery?" Loc. cit. 375.

We quoted with approval from Restatement of the Law of Torts as follows:

"'It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm.'" Loc. cit. 376.

We quoted from an article by Professor Updegraff beginning with these words:

"'In such cases the only inquiry should be whether the conduct of the plaintiff was "natural" under the circumstances, which is to be ascertained by a counter-chronological examination of the facts. Here the term "natural" must be taken to embrace those qualities of human nature leading to risk-taking in an effort to preserve property, to rescue other persons, or to save oneself. It necessarily includes actions which these well recognized and familiar human feelings bring about. * * *.'" The quotation ends with this statement: "'In any such case the defendant will be held liable, for the "natural" conduct of the **rescuer leaves no break** or gap in the chain of causation.'"

Appellant's brief quotes from Wagner v. International Railway Co., 232 N. Y. 176, 180, 133 N.E. 437, 19 A. L. R. 1, 3, wherein Mr. Justice Cardozo discusses the problem. We quote excerpts therefrom:

"'Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. * * * The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had. * * * We may assume, though we are not required to decide, that peril and rescue must be in substance one transaction; but the sight of the one must have aroused the impulse to the other; in short, that there must be unbroken continuity between the commission of the wrong and the effort to avert its consequences. * * *.'"

The weakness in plaintiff's case is not in the law. It is in the facts. She did not respond to any cry of danger

either spontaneously or as a calculated risk. She went out on the road in the first instance in response to a request of her husband. She was to stand near the entrance to the farmyard to turn the cattle in as they came down the road.

She left her post and went into the cemetery to view the situation. The cattle in the cemetery were in no danger. They could have been kept in and the others kept out by simply closing the gate through which both plaintiff and her husband entered the cemetery.

Plaintiff's running around in the cemetery was not a reasonable risk incident to the safety of the cattle or the safety of motorists on the highway. Neither was it such a spontaneous or calculated risk as to excuse her contributory negligence under the rescue doctrine.

Plaintiff's own acts intervened to break the chain of causation from defendant's negligence. Her own acts were the cause of her injury and bar recovery. A counter-chronological examination of the facts does not show such "natural conduct of the rescuer" as to support the chain of causation. There is no "unbroken continuity between the commission of the wrong and the effort to avert its consequences."

We agree with the trial court. Plaintiff's case was too weak in the necessary elements to support the verdict. Sympathy for an injured plaintiff will not alone support a verdict founded in tort.

Since 1892 it has been the rule in Iowa that to generate a jury question there must be substantial evidence. A mere scintilla is not enough. Ellingson v. Kramer, 255 Iowa 1257, 1262, 125 N.W.2d 777, 780, and authorities cited therein.

Other defenses raised and theories argued need not be discussed.

The case is—affirmed.

THOMPSON, PETERSON, MOORE and STUART, JJ., concur.

LARSON, J., and GARFIELD, C. J., dissent.

THORNTON, J., takes no part.

HAYS, J., not sitting.

LARSON, J. (dissenting)—I must respectfully dissent from the majority conclusion for I cannot see where the chain of events consequent upon defendant's negligence was broken by an intervening negligent act of the plaintiff as a matter of law. Plaintiff and her husband were trying to round up scattered cattle which reasonable minds could readily find were a present and potential danger to the traveling public on Highway 218. Indeed, defendant himself testified: "I would agree it would not be a safe thing to do to leave cattle loose in highway area." It is clear the motorist who aroused plaintiff's husband from his sleep thought presence of the cattle on the highway created a danger. Only the majority seems to be of a different opinion.

As plaintiff's husband had trouble in driving the cattle northward to the barnyard gate, and some stock had gone into the cemetery lot which was not completely fenced, plaintiff went into the cemetery to assist him. When it appeared he would succeed in getting the cattle out of the cemetery, she hurried to head them off from traveling farther south down the highway. There was no fence on top of the wall for about 125 feet, so when she endeavored to reach the road from her position in the cemetery, she came to an opening in the fence and fell to her injury.

As pointed out in Wagner v. International Railway Co., 232 N. Y. 176, 133 N.E. 437, 19 A. L. R. 1, danger invites rescue. Both plaintiff and her husband were so engaged when this accident happened. There was no departure from that effort when they went into the cemetery to round up these animals. The majority intimate they should have closed the cemetery gate, an act they had no right to do, but even so, with a stairs and an unfenced opening to the highway, the danger to the traveling public would not have been eliminated. There was no showing the cattle could not have escaped had the gate been closed, and she was not aware of that fact if it were a fact. I feel the jury could reasonably find the situation the same as if these cattle were then upon the highway itself and that the danger still existed. Further, the cattle could

have done a good deal of damage to the cemetery had they remained there.

Plaintiff's action in going to her husband's aid when the cattle could not be driven northward on the highway was only an answer to his distress. This was her testimony. She recalled "being awakened and hearing voice say cattle out on highway. * * * I could see through window husband was having trouble, that he needed someone to stand and block off driveway to keep them from going north on highway * * *. My husband came in. He wanted me to come out by the driveway and head them off. I had already assumed that I'd have to get up and help. I could see that one person couldn't get them in alone. * * * By time I went out there the cows had congregated further south, on the highway and had entered this * * * I waited up by the drive for just a few minutes anyway, but the cows were not coming." She said she went out "because I didn't think you could let animals run on the highway for fear of automobiles hitting them. The animal would get killed, plus the fact as to the danger of people in those cars being injured. And I know that that was my reason for going out and helping. * * * Someone had to do it, and I felt I was the only other person available. * * * I know it was very dark * * *. * * * the cows weren't coming near the driveway but were scattered further on down and into the cemetery. I went down to view the situation." She heard cattle in the southeast corner of the cemetery and started for them when she heard her husband coming with others farther back. She decided she should keep those cattle from going farther south on the highway. "I saw a fence and assumed the end of the fence meant you were free to go." She wasn't aware of the wall. She was running when she went over it to her injury. She said she was not aware there were steps and handrails leading from the top of the wall down. They were 25 to 30 steps north. She said she "didn't stop to think that if I had closed the gate there [to the cemetery] the cattle would have been trapped in the cemetery because I was not aware cattle couldn't come down the wall." Then too "I couldn't imagine letting

cattle run in cemeteries, a place of respect." It was a cold night and it was windy.

Plaintiff was helping get the cattle started northward out of the cemetery, feared they would then turn south down the highway, and raced to head them off. Plaintiff could not reach the highway on the south because of the fence, so she followed it to the opening; she did not have in mind the drop from the wall, and fell. It was at least a jury question as to whether her acts were normal in this rescue attempt.

Section 443, Restatement Torts, expresses the rule on which plaintiff is entitled to rely:

"An intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about.

"Comment: a. The rule stated in this Section applies * * * to acts done by the person who is harmed * * *. It is not necessary that an act which is done by the person harmed or by a third person should be 'reasonable'; that is, that the act should be one which a reasonable man would regard as not involving an unreasonable risk to himself or others. * * *"

As Justice Cardozo said in the Wagner case, supra, "The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal."

I think the cemetery was no different from any other non-fenced area adjacent to the highway and that pursuit of loose animals into such an area would not bar recovery if injury occurs to the rescuer which would be compensable had it occurred on the highway itself.

The majority do not deny the law favors plaintiff. They say the facts are against her, but I cannot concur in that conclusion. I would, therefore, reverse the judgment of the trial court for defendant notwithstanding the verdict, and let the verdict stand.

GARFIELD, C. J., joins in this dissent.