ALLIED MUTUAL CASUALTY COMPANY, INCORPORATED, appellant, v. GEORGE HARLAN LONG, appellee.

No. 50193.

(Reported in 107 N.W.2d 682)

830

FEBRUARY 8, 1961.
REHEARING DENIED APRIL 4, 1961.

Boardman, Cartwright & Druker, of Marshalltown, for appellant.

Lundy, Butler & Wilson, of Eldora, and L. E. McGinnis, of Marshalltown, for appellee.

THOMPSON, J.—This appeal involves two assignments of error. The trial court, after issue joined, made an adjudication

of law points under the provisions of R. C. P. 105, in which it held plaintiff's petition stated a cause of action. Eight days later, however, it changed its ruling, held no cause of action was stated, and dismissed the petition. The court stated it had not understood the allegations of the petition as plaintiff's counsel later advised it they were intended, nor as involving the substantial question which plaintiff sought to raise in the case. In the light of its later interpretation, the court found no cause of action pleaded, and dismissed the petition. Plaintiff's counsel do not agree with the final interpretation put upon the petition by the court, but contend it was in error in its application of the law.

I. We are first confronted with a question of procedure. The plaintiff urges that having once made its ruling under rule 105, the court was without power to change it, and was in error in attempting to do so. The material part of rule 105, upon which the plaintiff relies, is this: "* * * It [the court] shall enter an appropriate final order before trial of the remaining issues, adjudicating the point so determined, *which shall not be questioned on the trial of any part of the case* of which it does not dispose. * * *." (Italics supplied.) Plaintiff cites Weik v. Ace Rents Incorporated, 249 Iowa 510, 513, 87 N.W.2d 314, 317, and Litchford v. Iowa-Illinois Gas and Electric Co., 247 Iowa 947, 952, 75 N.W.2d 346, 348. The Weik case says only that the adjudication was a final order and that no motion for judgment on the pleadings was necessary. Litchford holds that when law points have been determined under rule 105 they should be followed on the trial and may not there be reversed or questioned. Neither is determinative of the point to be decided here. We have universally held that the trial court may, at the same term, change or modify an order or judgment. Concannon v. Blackman, 232 Iowa 722, 728, 6 N.W.2d 116, 119, and cases cited. It is true this case and the authorities cited were all decided before the adoption of the Rules of Civil Procedure. But we think the principle is the same. Rule 105, so far as it says the order shall not be questioned on the trial, means that it is final on the question decided when further proceedings are had. It is a guide by

which the parties may determine their conduct if any issues remain. But we do not think it prohibits the court from changing its ruling before any such issues are reached; or when, as here, it determined the case and dismissed the petition. A court may always correct error into which it has fallen, before final judgment. Kuiken v. Garrett, 243 Iowa 785, 792, 793, 51 N.W.2d 149, 154, 41 A. L. R.2d 1397, and citations. The advantage of this rule is apparent here. If the court, although convinced its first ruling was in error, had not been permitted to correct it, it must be presumed the cause would have proceeded to trial and the court at that point would not have been permitted to change the ruling. Under the plaintiff's interpretation of rule 105, a change could have been made only on appeal. We think this is not the meaning of the rule. At least until other proceedings have been taken, the trial court has the power to change its rulings under rule 105 if convinced they are in error. We find no merit in plaintiff's first assignment.

II. The second, and major, question presented by plaintiff's appeal is whether, under the circumstances existing as shown by its petition, it is necessary in a suit for contribution for the plaintiff to plead, and prove, its own actionable negligence to the third party injured. Briefly, the case as made by the petition, which is the governing consideration here since the matter was decided upon the pleadings in the trial court, is that the plaintiff's insured, operating a truck-trailer motor vehicle, was following an automobile owned and driven by the defendant; without signal or warning the defendant suddenly slowed the speed of his automobile so as to bring it to a near stop. Defendant's car was not equipped with any signaling device for warning traffic in its rear. As a result of the sudden slowing of the defendant's automobile plaintiff's insured was faced with an emergency and in order to avoid colliding with defendant's car the truck-trailer operator applied his brakes and attempted to steer his vehicle so as to avert a collision but was unable to do so and collided with an oncoming automobile driven by one Davis and Davis was instantly killed.

It is further pleaded that a settlement was made with Davis' estate by the plaintiff on behalf of its insured, in the

sum of $15,500; and recovery of one half of said sum, or $7750, was asked; the prayer of the petition being "that it [plaintiff] be granted a right of equitable contribution against defendant" and that judgment be rendered against defendant in the amount above set forth, with interest and costs.

The fighting point in the case arises from the allegation in the petition that plaintiff conducted an investigation of the mishap and "the facts of the matter were such that if the matter had been litigated, the trier of fact might reasonably have found that the plaintiff's insured was negligent in the operation of his said motor-truck unit at said time and place * * *." Certain specific negligences of the insured which might have been found by the fact trier were set forth; and it was alleged these might also have been found to have concurred with the negligence of the defendant as being the proximate cause of the accident. Specific negligences of the defendant were also pleaded.

It will be observed that the plaintiff did not plead that its insured was in fact negligent; only that the trier of fact might have found it to be so. The trial court, on its determination of law points, held this to be a fatal defect, and dismissed the petition.

It is not disputed that the right of contribution among tort-feasors may arise where one of them has made a settlement instead of litigating its liability to the injured third party. We have recently so held. Hawkeye-Security Insurance Co. v. Lowe Construction Co., 251 Iowa 27, 99 N.W.2d 421. Nor does the plaintiff deny that generally the right to contribution among tort-feasors is based upon a common liability to a third party. It presupposes actionable negligence of the tort-feasors making all liable to the third party. Best v. Yerkes, 247 Iowa 800, 805, 77 N.W.2d 23, 26, 27, 60 A. L. R.2d 1354; Constantine v. Scheidel, 249 Iowa 953, 958, 90 N.W.2d 10, 13; Hawkeye-Security Insurance Co. v. Lowe Construction Co., supra, at page 37 of 251 Iowa, pages 428, 429 of 99 N.W.2d; 13 Am. Jur., Contribution, section 51, page 48; 18 C. J. S., Contribution, section 3, page 4.

But the plaintiff thinks this rule should not apply in cases

where one of the alleged tort-feasors has entered into a settlement with the injured party. It says it has been developed in cases where the injured party has sued one or all of the tort-feasors, or where one sued tort-feasor has impleaded the others and the matter proceeds to trial and judgment against the tort-feasors; or where the injured party has sued one of the alleged tort-feasors and recovered judgment. But it would have us draw a distinction when one of the tort-feasors has settled with the injured party before trial. In such a case, as in the one now before us, it is contended an alleged tort-feasor should have the right to make a reasonable settlement if it appears a trier of the facts might reasonably have found the settlor liable because of negligence, and it is sufficient to plead and prove this situation. With one exception, no authority is cited by the plaintiff which supports its position. In this connection, the term "joint tort-feasors", which is commonly used, should in fact be "concurrent tort-feasors", as is pointed out by Judge Henry Graven of the Federal District Court for the Northern District of Iowa, in Chicago and North Western Ry. Co. v. Chicago, Rock Island & Pacific R. Co., 179 F. Supp. 33. But we conclude, as did the learned Federal Judge, that the term has been so commonly used that it is commonly understood. This usage is confirmed by the definition given in the Uniform Contribution Among Tort-feasors Act, section 1, 9 Uniform Laws Annotated, which says: "For the purposes of this Act the term 'joint tort-feasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." We use the term in line with this definition, as applying to concurrent tort-feasors.

The sole basis for contribution among joint tort-feasors is a common liability. The cases, including those cited above which so hold, are legion. It is a fundamental principle of the right; without it there is no right. There may be, under proper circumstances, a right to full recovery of sums paid on the theory of subrogation or of full indemnity, as the Wisconsin Supreme Court has pointed out in Farmers Mutual Auto. Ins. Co. v. Milwaukee Auto. Ins. Co., 8 Wis.2d 512, 99 N.W.2d 746,

750. But contribution will not be available in any case unless there is a common liability. This was emphasized in American Auto. Ins. Co. v. Molling, 239 Minn. 74, 77, 57 N.W.2d 847, 850, where is quoted with approval these statements:

" 'Since the right of contribution depends upon the satisfaction, by one of several obligees, of an obligation which would otherwise fall upon all, *it is essential that they be equally bound to one principal.*' " 2 Beach, Modern Equity Jurisprudence, sections 822, 824. Also: " 'It is a right which accrues to one or more individuals (out of the whole number bound) who pay the debt *for which they are all bound.*' " 2 Story, Equity Jurisprudence (14th Ed.) section 648. The emphasis is that of the Minnesota Supreme Court, in each quotation.

■ It is the apparent thought of the plaintiff in the case before us that we should change the basis for contribution by saying that in the case of a settlement by one alleged tort-feasor, it is sufficient if the trier of the facts in a suit by the injured third party might find him actionably negligent; and so, that he need not plead and prove actionable negligence, but only that it might have been found against him. Thus, if its theory is to prevail, he might recover although the trier of fact found him in fact not negligent at all, and so to have had no actual liability to the third party. If we were to adopt this view, we should be laying an entirely new foundation for the action of contribution, which no authority supports. The plaintiff says it is unthinkable that any system of jurisprudence should require it to plead and prove its own negligence in order to recover; or that it might be defeated by a defendant who might say "You were in no manner negligent; the fault was entirely mine." At first glance, this may seem an appealing argument. But its ready answer is that it is the same system of jurisprudence which gives the right of contribution which prescribes the terms on which the remedy is available. If one who has settled with an injured party is not ready to admit his own negligence in a contribution action, he has mistaken his remedy. He cannot have his cake and eat it. If he thinks he was in fact not liable, he may take an assignment of the claim, or perhaps proceed under a theory of subrogation, in a proper case. But if he elects to recover on a theory of contribution, he must be

prepared to bring himself within the universally defined rules which govern it.

III. We have said that there is one exception to the statement that no authority is cited which supports the plaintiff's position. Perhaps we should have said there is no exception; for the one case which could be said to be in line with plaintiff's contention was promptly disavowed and overruled by the same court. It is Rusch v. Korth, 2 Wis.2d 321, 86 N.W.2d 464. There, the Wisconsin Supreme Court did in fact take a position like that of the plaintiff in the case at bar. After suit but before trial, Korth settled with Rusch, the plaintiff; and asked contribution against an alleged joint tort-feasor, Hemierl. The jury found she had not been negligent, and the trial court entered judgment dismissing her cross-petition asking contribution. The Wisconsin Supreme Court, with two Justices disagreeing on the major ground, reversed. It said that if one alleged tort-feasor who is negligent could recover in an action for contribution, it could see no reason why one who was not negligent at all could not do so. The plaintiff in the case before us concedes this may go too far. But there is no substantial difference between the Wisconsin case and plaintiff's position. The jury in the instant case might find plaintiff's insured was not negligent, and yet permit plaintiff to recover contribution under its theory.

In any event, the Wisconsin Supreme Court lost little time in reversing itself. Two years later, in Farmers Mutual Auto. Ins. Co. v. Milwaukee Auto. Ins. Co., supra, it said of Rusch v. Korth, supra: "As a contribution case it stands as an anomaly in the law." Page 517 of 8 Wis.2d, page 749 of 99 N.W.2d. (And so it does.) It is further said, at page 519 of 8 Wis.2d, page 750 of 99 N.W.2d:

"We did not intend the Korth case to change the traditional law of contribution in this state so as to make it unnecessary for the party seeking contribution to allege and prove his negligence, the negligence of the defendant, and common liability resulting from such joint negligence. The language therein used extending the doctrine of contribution to cases when no common liability exists at the time of the accident cannot be approved.

"* * * this court is of the opinion that, *to recover on the basis of contribution, nonintentional negligent tort-feasors must have a common liability to a third person at the time of the accident created by their concurring negligence.*" (Italics supplied.)

It should be noted that this language was used in a settlement case; that is, the plaintiff did not allege negligence on the part of its insured, but said it had settled a third-party claim and that the defendant's insured was negligent in causing the injuries to such party. It was ordered that a demurrer to the petition be sustained.

So in Western Casualty & Surety Co. v. Milwaukee General Construction Co., 213 Wis. 302, 308, 251 N.W. 491, 493, the plaintiff, as insurer, had settled a claim of an injured third party, and asked contribution from the defendant of one half of the amount paid. A demurrer was sustained to the complaint on the ground that no contribution could be had when the plaintiff had settled rather than being forced to pay through a judicial determination. The judgment entered on the demurrer was reversed. In the course of the opinion the court said: "The burden is upon the paying tort-feasor to establish his own negligence and the negligence of the other tort-feasor as the concurring causes of the injuries."

Additional light is shed upon the question before us by the Uniform Contribution Among Tort-feasors Act, 9 Uniform Laws Annotated, supra, from which we have already quoted the definition of joint tort-feasors, found in section 1. This Act has not been adopted in Iowa; our contribution remedy is based upon the common law. But the entire tenor of the Act shows that in general it follows the common-law principles governing contribution. Thus section 2(1) says, "The right of contribution exists among joint tort-feasors." In commenting on the rule established by the Act, a Commissioners' Note, under section 2, supra, found on page 235 of 9 Uniform Laws Annotated, says: "* * * the old common-law rule [was] that the number of persons commonly liable automatically determined the pro rata share of each in contribution proceedings." Further sections lay down the rules to be followed when one

tort-feasor has secured a release from the injured party. Nowhere in the Act is there any intimation that the requirement that there must be a common liability which one tort-feasor has satisfied is different in settlement cases than it is when the liability has been adjudicated in litigation. In fact, the language of section 1, above quoted, clearly indicates that no distinction is made.

The plaintiff thinks settlement of claims in cases where a right of contribution may arise may be discouraged if we do not adopt its theory. We are not persuaded that this is so; but in any event we do not see how we can abrogate the rule that there must be a common liability, pleaded and proved, before the right arises. To do so would be to put contribution upon an entirely new basis, never before recognized or applied by any court except in the now overruled case of Rusch v. Korth, supra. The plaintiff here has not pleaded its own negligence as one of the concurring causes of the injury to Davis. It says only that a trier of the fact might reasonably have found its insured to have been negligent. This means that it would not have been necessary in the case at bar for the fact trier to find actual negligence of the plaintiff's insured; it might have been found that, while there was a "reasonable probability" such negligence might have been found, there was in fact no negligence. Yet such a finding would have required contribution from the defendant.

The concurring negligence which gives rise to a right of contribution must have existed at the time of the accident. Contribution in this class of cases has as its foundation the thought that, when two parties have contributed to an injury to a third party, it would be unjust to require one who has paid the entire loss to carry the whole burden; the one who has paid nothing should be required to assume his share. On this point, no authority makes any distinction between cases where negligence has been adjudicated and those in which a settlement was made by one party. As we have pointed out, actions for full indemnity or by subrogation may be available to the settlor in proper cases. But he must decide what remedy he will seek, and he cannot avoid the settled basis for contribution by saying it is difficult to determine which way to go.

The plaintiff cites Henke v. Iowa Home Mutual Casualty Co., 249 Iowa 614, 87 N.W.2d 920, to show that this court has put a burden upon an insurance carrier to settle claims against its insured, and urges that we should therefore change the rule requiring pleading and proof of concurring negligence among tort-feasors. The argument is that the Henke case places the insurer between the Evil One and the deep sea; if it settles, it may not exact contribution unless it is prepared to plead and prove the concurring negligence of its insured; if it does not settle, it may be held liable for sums beyond the amount of its policy. First we should note that the case upon which the plaintiff relies at this point is not the Henke case found, in 249 Iowa. The correct citation is Henke v. Iowa Home Mutual Casualty Co., 250 Iowa 1123, 97 N.W.2d 168. But plaintiff claims more for the case than it really holds. We said:

"If the insurer has exercised good faith in its dealings with the insured and if the settlement proposal has been fully and fairly considered and decided against, based upon an honest belief that the action could be defeated or the judgment held within the policy limits, and in which respect local counsel have honestly expressed their conclusion, the insurer cannot be held liable even though there is a mistake of judgment in arriving at its conclusion." Pages 1130 of 250 Iowa, 173 of 97 N.W.2d.

The Henke case was an extreme one, and was based upon bad faith and, perhaps, negligence of the carrier. It does not furnish a basis for the fears which the plaintiff expresses, nor does it have much, if any, bearing upon the question before us.

We find no merit in the plaintiff's contentions, and decline to depart from the established basis, both in the common law and the Uniform Contribution Among Tort-feasors Act, which rests the right to contribution upon a common liability arising at the time of the accident. The whole matter may be summed up in the statement that before there can be contribution among tort-feasors, there must be tort-feasors.—Affirmed.

GARFIELD, C. J., and HAYS, PETERSON and THORNTON, JJ., concur.

SNELL, OLIVER and LARSON, JJ., dissent to Division II.

BLISS, J., takes no part.

SNELL, J. (dissenting)—I respectfully dissent from Division II. I think the result is unfortunate and I am disturbed about the practical difficulties and unfair results facing trial judges, trial juries, trial lawyers and litigants as a result of this decision. I fear that confusion will prevail. When a jury is instructed that plaintiff must establish his own negligence, the jurors will, figuratively speaking, recoil in astonishment and say, "If plaintiff was at fault, what is he doing here?" It is true that difficulties of trial judges are occupational hazards. It is also true that "possible confusion in the case" does not "overweigh the advantage" of sound and expeditious administration of justice. This does not mean, however, that we should create unnecessary confusion. The result in the instant case has the quality of logic developed from respectable authority accurately quoted, but in my opinion the doctrine of contribution should be re-examined so that unnecessary, unrealistic and unfortunate results may be avoided.

An article published in Volume 37 Iowa Law Review, in 1952, on page 553, says: "In order to prevent distortion of indemnity law, not only should the substantive law of the state allow contribution * * * but the procedural law should be such as not to hamstring the beneficial effects of contribution. * * * a defendant who deserves contribution should not be denied that right merely because the plaintiff has not chosen to sue the other negligent tort-feasor, nor because the one seeking contribution has not had a judgment against him *but has instead made a reasonable settlement with the injured person."* (Emphasis supplied.)

This article dealing primarily with questions of indemnity is cited with approval in Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 60 A. L. R.2d 1354, which first recognized in Iowa the "right of equitable contribution" between concurring tort-feasors. While the term "joint tort-feasor" is commonly used to include not only those who are acting jointly but also those who are merely concurring tort-feasors, Best v. Yerkes, supra, carefully distinguishes between an intentional wrong and mere

negligence. The opinion then proceeds with sound legal reasoning to authorize "equitable contribution." If these words mean anything, they mean that there should be equity, fairness and justice in imposing liability. What the Best case really does is to plug the loophole through which a concurring tort-feasor might escape liability. The holding in the instant case opens a new loophole by permitting a defendant in a contribution case to escape liability by assuming full responsibility for the mishap. That is not in accord with the idea of equitable contribution. To permit escape from civil liability by proving one's own fault as exclusive is not sound law nor good procedure.

Best v. Yerkes says at page 805 of 247 Iowa: "The right to indemnity, or contribution, presupposes actionable negligence of both parties toward a third party." These words lead by pure logic to the concluding statement in the instant opinion "that before there can be contribution among tort-feasors, there must be tort-feasors."

If the result in the instant case is the only result that can be reached in the light of Best v. Yerkes, the rule should be modified, or an exception noted, because as said in that case: "The law, as laws have a tendency to do, has become considerably confused." (Page 806 of 247 Iowa)

The Henke case, 250 Iowa 1123, 97 N.W.2d 168, referred to in the majority opinion, was, as noted, an extreme case but it does clearly place a duty of good faith action on an insurance carrier. If in good faith an insurance carrier must settle in order to protect the insured and by doing so is denied a "right of equitable contribution", a carrier, or in some cases an uninsured defendant, is indeed on the horns of a dilemma.

The opinion in the instant case suggests the possibility of protective measures by assignment or subrogation. Possibly another method might be by the entry and payment of a judgment rather than payment on a stipulation of settlement. Such methods, however, would be vulnerable to attack more serious than we have in the instant case. Under an assignment or subrogation agreement, recovery would not necessarily be limited to "equitable contribution." The recovery might even yield a profit. The settlement by entry of judgment might be attacked as collusive.

I do not think that the basic philosophy supporting Best v. Yerkes or sound jurisprudence requires or supports the conclusion reached in the majority opinion.

In a contribution case neither admission nor proof of absolute liability on the part of one who has settled should be a prerequisite to the essential propositions. Pleading and proof of involvement in the accident, the claim made by the injured party, the hazard faced, and good faith settlement should be sufficient prerequisite. The essential propositions to be established against one from whom contribution is sought should be the same as in a case by the original injured claimant with the prayer for recovery limited to a proportionate share of the amount paid the original claimant. If there is pleading and proof of liability based on negligence, proximate cause, freedom from contributory negligence and damage, the defendant should not be heard to complain because someone else has settled the claim, helped pay the defendant's liability and reduced his obligation by at least one half. A defense or an objection based on something that might be beneficial and could not possibly be prejudicial is without merit.

In the instant case the plaintiff, faced with substantial claims in a death case, paid $15,000 in settlement. This is not the act of a mere volunteer. It is more realistic to say that it was an act of prudence.

The plaintiff herein should not be penalized, nor should the defendant escape because of plaintiff's failure to plead and prove his own liability. The plaintiff was in the picture far enough to be entitled to claim contribution.

I would reverse.

OLIVER and LARSON, JJ., join in this dissent.