ORVILLE HENNEMAN, administrator of estate of Clara Henneman, appellee, v. DAVID McCALLA et al., defendants-appellants; FLOYD RAYMOND PETERMAN, defendant.

No. 52344.

(Reported in 148 N.W.2d 447)

64

Stephens, Thornell & Millhone, of Clarinda, for appellants.

Davidson & Hemphill, of Clarinda, for appellee.

Rawlings, J.—Plaintiff-administrator brought an action at law against three defendants claiming damages for death of his decedent, which resulted from two collisions involving three motor vehicles.

The ultimately tragic chain of events began about 11 p.m., August 1, 1963, on highways 2 and 71, near the east edge of Clarinda. An eastbound Ford pickup owned by defendant David McCalla, consent operated by his defendant sister, 18-year-old Mariann Sue McCalla, attempted a left no intersection turn just as a same direction automobile operated by Dan McComb was starting to pass. What may be best described as a side to side collision resulted. The testimony is in conflict as to whether any left turn signal was ever given by Mariann Sue McCalla.

McComb's car came to rest off the road some distance to the northeast.

The McCalla pickup skidded sideways and came to a stop facing southeasterly, somewhere near the center of the paved portion of the highway, about 27 feet east of the point of impact.

McComb and his guest, Janice Miller, went at once to the McCalla vehicle.

Other automobiles subsequently passed the pickup, including an eastbound automobile operated by plaintiff's decedent,

Clara Henneman. She stopped after passing, parked her car on the south shoulder of the road, and after placing a reflector on the highway went to the location of the McCalla pickup.

She, McComb, and Janice Miller were standing on the east side of the McCalla car trying to calm the hysterical Mariann Sue McCalla and get her out of there.

A second accident occurred about five or ten minutes after the first one when an automobile operated by defendant, Floyd Raymond Peterman, then intoxicated, also traveling in an easterly direction, hit the westerly side of the McCalla pickup, causing it to strike Clara Henneman, resulting in her instantaneous death.

The testimony is also in conflict as to whether Mariann Sue McCalla ever got out of the Ford pickup after the first and before the second accident.

The nonappearing defendant, Floyd Raymond Peterman, was adjudged to be in default. Trial to a jury resulted in a verdict adverse to defendants McCalla.

Although judgment in the sum of $23,620 was entered against all three defendants, David McCalla and Mariann Sue McCalla alone appeal. For our purpose they will be dealt with as defendants.

I. This being an action at law it is reviewable only on errors properly assigned. Rule 344(a)(3), Rules of Civil Procedure, and Marcan v. Petersen, 259 Iowa 557, 562, 144 N.W.2d 906, 909.

II. Defendants contend the trial court, as a matter of law, should have determined the acts and conduct of Peterman constituted an "intervening cause."

In so doing they, in effect, take the position negligence, if any, on the part of Mariann Sue McCalla was insulated from any causal connection with the death of plaintiff's decedent by reason of the negligence of Peterman, which was an efficient intervening force and superseding cause of the second impact.

The stand so taken by defendants is without merit under the factual situation here presented.

We are dealing with one phase of proximate cause. See annotations, 100 A. L. R.2d 944.

■ In Chenoweth v. Flynn, 251 Iowa 11, 16, 99 N.W.2d 310, this court said: " 'Proximate cause' is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. McClure v. Richard, 225 Iowa 949, 282 N.W. 312. 'Proximate cause' is a primary moving cause or predominating cause from which the injury follows as a natural, direct and immediate consequence and without which it would not have occurred. Daly v. Illinois Cent. R. Co., 248 Iowa 758, 80 N.W.2d 335. It is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen, and it is sufficient if the injuries are the natural, though not necessary or inevitable, result of the wrong. Cowman v. Hansen, 250 Iowa 358, 92 N.W.2d 682."

In this connection see also Klunenberg v. Rottinghaus, 256 Iowa 731, 739, 129 N.W.2d 68; Ness v. H. M. Iltis Lumber Co., 256 Iowa 588, 593, 128 N.W.2d 237; and Lockwood v. Wiltgen, 251 Iowa 484, 490, 101 N.W.2d 724.

And in Restatement, Second, Torts, section 447, the proximate cause rule as it relates to intervening acts is stated as follows:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Referring again to Chenoweth v. Flynn, 251 Iowa 11, 17, 18, 99 N.W.2d 310, we there said: "It is a rule too well established to require the citation of authority that the question of proximate cause is generally for the jury to determine, although

the line of demarcation between what is sufficiently proximate and what is too remote is often a thin one. If, upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created."

In this connection see also rule 344(f)(10), R. C. P.; Sayre v. Andrews, 259 Iowa 930, 942, 146 N.W.2d 336, 343, 344; Mass v. Mesic, 258 Iowa 1301, 1305, 142 N.W.2d 389, 392; Lockwood v. Wiltgen, 251 Iowa 484, 490–492, 101 N.W.2d 724; Knaus Truck Lines, Inc. v. Commercial Freight Lines, 238 Iowa 1356, 1366, 29 N.W.2d 204; McClure v. Richard, 225 Iowa 949, 953, 282 N.W. 312; Gray v. City of Des Moines, 221 Iowa 596, 599, 265 N.W. 612, 104 A. L. R. 1228; Godbey v. Grinnell Electric & Heating Co., 190 Iowa 1068, 1074, 181 N.W. 498; and Liming v. Illinois Cent. Ry. Co., 81 Iowa 246, 252, 47 N.W. 66.

Touching on this subject the court, in Milwaukee and St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 476, 24 L. Co-op. Ed. 256, 259, stated as follows: "In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

Furthermore proximate negligence need not be the sole cause of an injury. Concurrent negligence may be a proximate cause. Klunenberg v. Rottinghaus, 256 Iowa 731, 736, 129 N.W.2d 68; Ruud v. Grimm, 252 Iowa 1266, 1272, 110 N.W.2d 321; Allied Mut. Cas. Co. v. Long, 252 Iowa 829, 834, 107 N.W.2d 682; and Waterloo Sav. Bk. v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1372, 60 N.W.2d 572.

68

■ The factual situation in the case at hand discloses the jury could reasonably find the chain of events was such that the McCalla pickup would not have been in its precarious position on the highway were it not for the first accident, this resulted from Mariann's negligence, and the position of the McCalla vehicle created a hazard which, coupled with the concurrent negligence of Peterman, caused the second death dealing collision. In this regard the jury here determined, upon special interrogatory, Peterman's negligence was not the sole proximate cause of Clara Henneman's death.

There is here no rational basis upon which to conclude the trial court erred in refusing to hold, as a matter of law, the negligence of Peterman was an efficient intervening force which constituted a superseding cause of Clara Henneman's death.

The foregoing finds ample support in other decisions and authorities. See 65 C. J. S., Negligence, section 111(5), page 1216; 38 Am. Jur., Negligence, section 67, page 721; Restatement, Second, Torts, section 435(1); Harper and James, The Law of Torts, section 20.3; and annotations, 58 A. L. R.2d 274–284.

We have considered McClure v. Richard, 225 Iowa 949, 282 N.W. 312, and Parmenter v. City of Marion, 113 Iowa 297, 85 N.W. 90, cited by defendants, but find they are not factually comparable, and tend to be more favorable to plaintiff than to defendants on relevant principles of law.

■ III. Defendants also assign as error the trial court's failure to submit their requested instruction on intervening cause.

This proposal, clearly slanted in favor of defendants, is repetitious and not properly balanced.

The basic element which it contains is that negligence, if any, on the part of Mariann Sue McCalla, would not be a proximate cause of the death of plaintiff's decedent if it had causatively resulted from the intervening act of Floyd Raymond Peterman, which totally ignores the fact there may be concurrent negligence.

On the subject of requested instructions this court said in Kinyon v. Chicago & N.W. Ry. Co., 118 Iowa 349, 361, 92

N.W. 40, 96 Am. St. Rep. 382: "As a rule, instructions offered by counsel are not so framed that the court is justified in giving them literally as asked, but, if the main thought sought to be expressed contains a pertinent legal principle which is not already fully covered by other instructions given, the court should embody it in proper words in its own charge."

We have consistently adhered to this principle. See Lehman v. Iowa State Highway Commission, 251 Iowa 77, 85, 99 N.W.2d 404, and Law v. Hemmingsen, 249 Iowa 820, 825, 826, 89 N.W.2d 386.

When confronted with a problem such as that here presented we of course look to all relevant instructions, not to any one standing alone. And, if the substance of a requested instruction is covered in the instructions given, it is not error to refuse the request made. See Shank v. Wilhite, 256 Iowa 982, 985, 129 N.W.2d 662, and Brady v. McQuown, 241 Iowa 34, 39, 40, 40 N.W.2d 25.

This principle was in fact adopted in the giving of instruction 26. See Uniform Jury Instruction 1.4.

In the case now before us the trial court, by instructions 8, 9, 10, 21 and 21½, defined proximate cause, concurrent negligence, and intervening proximate cause, then told the jury plaintiff could not recover from defendants unless he showed by evidence the negligence of Mariann Sue McCalla was a proximate cause of the death, and if the conduct of Peterman was found to be an intervening proximate cause the law then refers the damage done to the last act, refusing to trace back to that which is more remote. In this regard see Dennis v. Merrill, 218 Iowa 1259, 1261–1263, 257 N.W. 322, and Godbey v. Grinnell Electric & Heating Co., 190 Iowa 1068, 1078, 181 N.W. 498.

While instructions 21 and 21½ might well have been better and more clearly phrased, they were in fact more favorable to defendants than to plaintiff.

The substance of the instruction proposed by defendants was embodied in those given.

Under these circumstances we fail to find prejudicial error

in the failure to give defendants' requested instruction on intervening cause.

IV. In this same vein defendants contend the trial court erred in failing to submit their requested instruction on contributory negligence.

There is no need to repeat the foregoing applicable principles of law.

The trial court adopted instruction 2.2 of Uniform Jury Instructions. In this regard see also Clubb v. Osborn, 256 Iowa 1154, 1161, 130 N.W.2d 648.

On the other hand we condemned an instruction on contributory negligence comparable to that proposed by these defendants in Clayton v. Blair, 254 Iowa 372, 379, 117 N.W.2d 879.

The instruction given sufficed. We find no error in the refusal to submit defendants' proposed instruction on this subject.

V. There was also submitted to the jury an instruction on concurrent negligence. Here the trial court closely followed instruction 2.8 prepared by the Iowa State Bar Association Special Committee on Uniform Court Instructions, adapting it to the facts in the case at hand.

Defendants claim the court erred in giving this instruction, contending concurrent negligence is not an issue.

In large part this assignment of error has already been discussed and determined adverse to defendants.

But there are additional authorities supporting our conclusion. In Allied Mutual Casualty Co. v. Long, 252 Iowa 829, 834, 107 N.W.2d 682, we said: "* * * the term 'joint tortfeasors', which is commonly used, should in fact be 'concurrent tort-feasors' * * *." Then in Mathews v. Beyer, 254 Iowa 52, 57, 116 N.W.2d 477, this court held, each person whose negligence concurs or combines to cause injury to another is liable therefor, questions as to proximate cause and concurrent negligence being peculiarly determinable by the trier of the facts. See also Hardwick v. Bublitz, 254 Iowa 1253, 1266, 119 N.W.2d 886; 65 C. J. S., Negligence, section 110, page 1179; and 38 Am. Jur., Negligence, section 63, page 715.

Upon the basis of the evidence presented and authorities heretofore cited, we find the giving of an instruction on concurrent negligence was not only proper but required.

██ VI. Another error asserted by defendants, closely related to the foregoing, is their claim to the effect the trial court failed to advise the jury as to the relationship between intervening cause and concurrent negligence. This is rather difficult to understand.

We fail to find in the record the defendants ever took this position in objecting to the jury instructions.

This court has previously held, only the grounds of objections to instructions given which were timely made upon the trial and not abandoned here, may be considered on appeal. See rule 196, R. C. P.; Ness v. H. M. Iltis Lumber Co., 256 Iowa 588, 592, 128 N.W.2d 237; and Crist v. Iowa State Hgwy. Comm., 255 Iowa 615, 628, 123 N.W.2d 424.

Finally on this point it is in this jurisdiction well settled, all instructions must be read and considered together. See Tilghman v. Chicago & N.W. Ry. Co., 253 Iowa 1339, 1350, 115 N.W.2d 165.

██ Defendants have failed to cite and we find no authority supporting the claim of error here concerned. In fact the relationship between intervening cause and concurrent negligence is in this case self-evident when the instructions are read as a whole.

VII. We come now to the matter of rescue. For assignment of error on this point defendants allege the trial court erred in failing to withdraw the question of rescue and in overruling their objection to instruction 22 upon that issue.

The record discloses defendants' objection to this instruction was as follows: "Defendants object to the giving of Instruction No. 22 for the reason that the evidence shows that there was no attempt made to rescue the defendant, Mariann Sue McCalla, by the deceased or anyone else."

It is thus apparent defendants, at time of trial and on appeal, have taken the position the "rescue doctrine" is not an issue in this case and the court erred in submitting an instruction on it.

They did not then and do not now challenge the form and content of the instruction as given. Their only claim is, the evidence did not justify giving it.

In this connection rule 196 provides in part: "* * * Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, * * * *specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.*" (Emphasis supplied.) See also Nizzi v. Laverty Sprayers, Inc., 259 Iowa 112, 117, 143 N.W.2d 312, 315; Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 456, 138 N.W.2d 93, 99; Briney v. Tri-State Mutual Grain Dealers Fire Ins. Co., 254 Iowa 673, 688–690, 117 N.W.2d 889; and Newman v. Blom, 249 Iowa 836, 845, 846, 89 N.W.2d 349.

So we are here strictly confined to one issue; was there sufficient evidence to justify the giving of an instruction on "rescue"?

Rescue is another phase of intervening force. It also involves proximate cause and contributory negligence, as to which instructions were given in this case.

Because of the high regard placed by the law on human life, the term "rescue" as here applied is sometimes referred to as the "humanitarian" or "good samaritan" doctrine.

The principle of it is that one who sees a person in imminent and serious peril cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made. In other words, in attempting to save the life of another, one is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for any injury sustained.

This doctrine is applied where one is injured or killed while attempting to assist and save another from imminent danger of personal injury or death. It is applicable even though no danger is actually imminent if the conduct of the rescuer is that of an ordinarily prudent person under existing circumstances.

And it is not contributory negligence for a person to expose himself to danger in order to rescue another from peril

if, under the circumstances, an ordinarily prudent person might so expose himself in order to save another from harm.

The test is whether the conduct of the rescuer was "natural" or whether he acted with reasonable prudence under the peculiar circumstances then existing.

In support of the foregoing see Clayton v. Blair, 255 Iowa 700, 123 N.W.2d 896; Clayton v. Blair, 254 Iowa 372, 117 N.W.2d 879; Wagner v. International Ry. Co., 232 N. Y. 176, 133 N.E. 437, 19 A. L. R. 1; Gambino v. Lubel, La. App., 190 So.2d 152; Demetro v. Pennsylvania Railroad Co., 90 N. J. Super. 308, 217 A.2d 329; Hammonds v. Haven, Mo., 280 S.W.2d 814; Guy v. Blanchard Funeral Home, 85 Ga. App. 823, 70 S.E.2d 117; Restatement, Torts 2d, section 472; 65A C. J. S., Negligence, section 124, page 83; 38 Am. Jur., Negligence, sections 79, 80, pages 738, 739, sections 194, 195, pages 874–877, sections 228, 229, pages 912–915; Annotations, 53 A. L. R.2d 1002 and 158 A. L. R. 189; Prosser on Torts, Hornbook Series, section 49, pages 360, 361; and 27 Iowa Law Review 2.

Also, whether the conduct of the rescuer was "natural" under the circumstances—whether he acted with reasonable prudence, is in most cases a question to be decided by the jury. Wagner v. International Ry. Co., 232 N. Y. 176, 133 N.E. 437, 438, 19 A. L. R. 1; Liming v. Illinois Cent. R. Co., 81 Iowa 246, 254, 47 N.W. 66; and editorial comment 166 A. L. R. 752.

Defendants would have us adopt a narrow or restricted view and hold, as a matter of law, rescue is not an element in the case at hand. We do not elect to assume this position.

Little is to be gained by adding to the acres of paper and streams of ink which have already been devoted to a discussion of the subject at hand.

There is sufficient evidence upon which a jury could reasonably find, there had been a nighttime accident involving the McCalla vehicle which came to rest near the center of the highway, facing in a southeasterly direction; McComb and his companion were standing beside the stopped Ford pickup; Clara Henneman, a nurse's aide, passed this scene; Mariann's screams could be heard by her; she returned to help calm the

hysterical Mariann and get her out of there; the impact of Peterman's car with the McCalla vehicle then occurred; and Mrs. Henneman was so injured as to cause instantaneous death.

Under this factual situation a jury issue was created as to the "rescue doctrine" and the giving of an instruction on it was proper.

VIII. Despite defendants' contention to the contrary, "assumption of risk" is not involved in this case.

In pleading they asserted this as an affirmative defense and accordingly requested an instruction which the trial court refused to submit.

The "assumption of risk" doctrine was fully discussed in Marean v. Petersen, 259 Iowa 557, 568, 144 N.W.2d 906, 913, where we distinguished it from contributory negligence. And there quoting from Edwards v. Kirk, 227 Iowa 684, 687, 288 N.W. 875, this court said: "Assumption of risk involves more or less deliberation, whereas contributory negligence implies lack of care, and hence absence of deliberate choice." See also Bohnsack v. Driftmier, 243 Iowa 383, 391, 52 N.W.2d 79.

More nearly in point however is this statement by Harper and James, The Law of Torts, section 21.2: "* * * the rescuer * * * on the highway, * * * does not assume the most open and obvious risks (though he may be negligent in encountering them under the circumstances of any given case)."

And in Restatement, Second, Torts, section 496E, is this pertinent declaration of principle:

"(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

"(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

"(a) avert harm to himself or another, * * *."

With reference hereto see also Wright v. Peterson, 259 Iowa 1239, 146 N.W.2d 617, 621–626, and 65A C. J. S., Negligence, section 174(5), pages 300, 301.

We are satisfied the trial court did not err in refusing to give defendants' requested instruction on assumption of risk.

IX. Another proposition urged by defendants is to the effect the trial court erred in giving an instruction relative to stopping on a highway without also advising the jury as to the statutory exception.

In giving instruction 15, the trial court followed Uniform Jury Instruction 4.59 pertaining to lamps on parked cars (Code section 321.395 as amended).

By instruction 16, employing the form set forth in Uniform Jury Instruction 4.44, the jury was advised first as to the stopping of automobiles on the highway (Code section 321.354). Then in accord with Uniform Jury Instruction 4.45 the jury was instructed as to the law relating to disabled vehicles (Code section 321.355).

Defendants apparently take the position the undisputed evidence discloses lights on the McCalla Ford pickup were on at all times.

In the first place this is debatable, and in any event overlooks rule 344(f)(17), which provides as follows: "Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered." On this point see also Jordan v. Sinclair Refining Co., 257 Iowa 813, 822, 135 N.W.2d 120, 125.

We find no substance in the error here assigned.

X. Pursuing their appeal, defendants also assert the trial court erred in not defining the word "impossible" as it appears in Instruction 16 on leaving a vehicle standing in the roadway, and Instruction 17 relative to legal excuse.

We have heretofore said the word "impossible", as employed in Code section 321.355, and our approved definition of "legal excuse", means "not reasonably practical". Silvia v. Pennock, 253 Iowa 779, 784, 113 N.W.2d 749, and McBeth v. Merchants Motor Freight, Inc., 248 Iowa 320, 323, 79 N.W.2d 303.

By Instruction 16 the jury was advised as to the law in connection with stopping on a highway, and exception thereto in the event a vehicle is disabled. Instruction 17 dealt with "legal excuse."

In the assignment of error with which we are here dealing, these instructions are not challenged as to form and content.

Rather, defendants claim the word "impossible" as used in these two instructions should have been defined.

In Law v. Bryant Asphaltic Paving Co., 175 Iowa 747, 753, 157 N.W. 175, 7 A. L. R. 1189, this court stated as follows: "It is probably true that no instruction or charge to a jury has ever been drawn with such perfect clearness and precision that an ingenious lawyer, in the seclusion and quiet of his office, with a dictionary at his elbow, cannot extract therefrom some legal heresy of more or less startling character. The real test of the meaning and effect of an instruction for the purpose of review by an appellate court ought to be, and we think is, the idea which the language objected to is fairly calculated to convey to the minds of jurors drawn from the ordinary walks of life; and the fact that, upon a minute, technical or hypercritical analysis, some other interpretation can be placed thereon may be disregarded."

Then in the case of In re Will of Smith, 245 Iowa 38, 40, 60 N.W.2d 866, is this statement relative to jury instructions: "We are not concerned with the niceties of the English language, but only with whether the jury properly understood the terminology used by the court."

Our question is whether "impossible", as the word is used in the instructions at hand, misled the jury to the prejudice of these defendants.

We find no basis upon which to conclude the jury was swayed, misled, or reached its decision by reason of any misconception of the meaning of the particular word here involved.

The definition we have given it is neither a strained nor fanciful one for the word does not always have a strict, limited and inflexible meaning. In fact as used in Code section 321.355, and the term "legal excuse" as here employed, it is at once evident our previously stated definition is one which would normally be accorded by reasonable men and women for it is seldom, if ever, literally impossible to move a disabled vehicle from a highway.

Unless otherwise prescribed the true intent and meaning of the word "impossible" must be determined in accord with the circumstances to which applied. See Code section 4.1(2).

It is a word of common and generally accepted meaning which permits, but does not compel, a definition when used in the giving of instructions to a jury. See State v. Wallace, 259 Iowa 765, 773, 145 N.W.2d 615, 620.

Stated otherwise the court might well have given the requested definition but failure to do so does not constitute prejudicial error.

Defendants cite no authority to the contrary and we find none.

 XI. During trial of the case some housewives, mothers, and one husband-father, testified as to the reasonable value of the services of plaintiff's decedent as a wife and mother.

Some of these witnesses were closely acquainted with Mrs. Henneman and had visited in her home. Others had not been socially in contact with her for some time. One or two of them had never been in her home. However, all had known, seen or visited with her, and knew of her commendable community activities and skill as a homemaker.

Defendants contend there was not sufficient foundation upon which to permit such opinion evidence.

In dealing with this type of testimony as it related to the matter of speed of an unseen motor vehicle, we previously held the opinion of a qualified *expert* on a proper subject is not objectionable because it invades the province of the jury. But, the witness should be qualified and the facts on which he bases his opinion should be sufficient to enable him to express more than a conjecture. See Hardwick v. Bublitz, 254 Iowa 1253, 1256–1261, 119 N.W.2d 886.

On the other hand this court said in Mundy v. Olds, 254 Iowa 1095, 1104, 120 N.W.2d 469, as follows:

"The receipt of opinion evidence, lay or expert, rests largely in the sound discretion of the trial court. Waterloo Sav. Bk. v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1374, 60 N.W.2d 572, and cases cited. Also see, for a complete discussion of the law and authorities on such opinion evidence, Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654.

"It is true generally that an opinion is not to be received upon an ultimate issue of fact if the jury is itself equally qualified to pass upon such an issue. McKeever v. Batcheler, 219 Iowa 93, 97, 257 N.W. 567; Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635. However, considerable leeway is allowed in this field of evidence for the reason that no matter how the opinion question is phrased or formulated, it remains an opinion which the jury is at liberty to reject. Therefore, only in clear cases of abuse would an admission of such evidence be found prejudicial. Such does not appear in the case before us.

"It is well settled in Iowa that if a witness is possessed of special training, experience, or knowledge in respect to the matter under investigation, and if his opinion based on evidentiary facts will be of aid to the jury in reaching a correct conclusion, and if the opinion expressed does not bind the jury to accept it, but leaves the ultimate conclusion to be determined by the judgment of the jurors themselves, such testimony is not improper nor prejudicial." (Authorities cited.)

Also, McCormick on Evidence, section 11, page 23, makes this statement: "It is believed that the standard actually applied by the trial judges of today approaches more nearly the principle espoused by Wigmore, namely that the opinion should be rejected only when it is superfluous in the sense that it will be of no value to the jury." See Wigmore, Evidence, section 1918.

Approving testimony similar to that here challenged, this court said, in Bridenstine v. Iowa City Elec. Ry. Co., 181 Iowa 1124, 1134, 165 N.W. 435: "The services of a competent wife or mother cannot be weighed in the scales of the money changer. And indeed it would seem almost frivolous to call witnesses to estimate their monetary value. The best that can be done is to prove the facts and circumstances of the woman's life and service in these capacities, her age, health and strength, her expectancy of life, and all that may appear to enlighten the minds and aid the judgment of the jurors, and leave them to assess such recovery within the statutory limit as they find and believe to be just."

See also Nolte v. Chicago, R. I. & P. Ry. Co., 165 Iowa 721, 725–728, 147 N.W. 192.

We are not here dealing with that which necessarily stands in the field of, expert testimony.

Furthermore it would appear the existence or nonexistence of strong qualifications to testify, regarding the value of services of a wife and mother, really goes to the weight rather than admissibility of the evidence. See Nicholson v. City of Des Moines, 246 Iowa 318, 327, 328, 67 N.W.2d 533.

This is a matter resting largely in the administrative discretion of the trial court, and we fail to find it was here so manifestly abused as to constitute prejudicial error. See Marean v. Petersen, 259 Iowa 557, 563, 564, 144 N.W.2d 906, 910.

XII. Defendants, by way of another assignment of error, assert as follows: "The trial court erred in failing to sustain defendants-appellants' motions to strike certain allegations and claims contained in plaintiff's petition and subsequent amendments thereto."

This is nothing more nor less than an omnibus statement with no applicable authority cited to sustain it.

Furthermore, little or nothing is to be gained by attempting any operational process of dissecting and analyzing the various pleadings, motions, orders and rulings, to which reference is generally made in defendants' written argument.

An assignment of error constitutes appellants' pleading in the appellate court. 5 C. J. S., Appeal and Error, section 1217, page 34.

Each error must be separately and distinctly stated. Rule 344(a)(3), R. C. P.; Allerton-Clio-Lineville Com. Sch. Dist. v. County Board of Education, 258 Iowa 846, 848, 140 N.W.2d 722, 723; Parks v. Brown, Alaska, 368 P.2d 220; 5 C. J. S., Appeal and Error, section 1260(c), page 112; and 5 Am. Jur.2d, Appeal and Error, section 694, page 139.

Under no circumstances could the various matters here apparently involved be resolved with any reasonable degree of certainty. See Keefe v. Price (not contained in Iowa Reports), 282 N.W. 309, 311, 312, and Luther v. National Investment Co., 222 Iowa 305, 317, 268 N.W. 589.

We accord no recognition to this alleged assignment.

XIII. Finally, defendants contend the verdict was excessive.

The evidence discloses plaintiff's decedent was 43 at time of death, a person of that age having a life expectancy of 29.54 years; she was married; the mother of four children, one of 10 years at home, the others 21, 23 and 26; a good wife and neat housekeeper; helped her husband with his farm work; was employed, earning $130 each month as a nurse's aide; pleasant, congenial and active in her church.

The verdict for $23,620 was challenged by a motion for new trial. This motion was overruled and judgment accordingly entered.

We have repeatedly dealt with this matter but will again set forth applicable standards.

A comparison of verdicts is of little value in determining whether an award in a particular case is excessive. Each must be evaluated according to the evidence peculiar to it alone.

And in dealing with the subject we recognize the declining purchasing power of the dollar.

It is not for us to invade the province of the jury. We will not alter a verdict unless it is (1) flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motive; or (4) is lacking in evidential support.

In support of the foregoing see Beyer v. City of Dubuque, 258 Iowa 476, 489, 139 N.W.2d 428, 436.

A verdict for death of a six-year-old girl in the sum of $28,000 was reduced by remittitur to $12,000 in Hurtig v. Bjork, 258 Iowa 155, 138 N.W.2d 62.

But in the case now before us the value of services of a wife and mother, and a wage earner, are also involved.

. Defendants cite no authority which can be said to sustain their position on this issue.

Although not necessarily determinative, the jury here resolved the matter of damages on all the evidence presented and the trial court found no cause to disagree.

We are satisfied the verdict in this case was reasonable and fair under all attendant circumstances.

XIV. The judgment entered against defendants, David McCalla and Mariann Sue McCalla, must be and is—Affirmed.

All Justices concur.